**OFFICE NOTE    02/21/2002**

**RE:  EVELYN MC KINLEY**

The patient complains of migratory pains involving her low back, buttocks and posterior thigh. Her right and as well as left leg is not consistent.  She has made no forward progress.  She still is doing physical therapy at home.  She didn't have the epidural and doesn't want an epidural at this point.

Her past medical history is stable.

On exam, she has no new findings.  Her exam is unchanged. She has no new weaknesses.

I suggested a consult with Dr. Rai.  Even though she does not want an epidural, she can at least be assessed and see if there is anything that can be done for her.  At this juncture, I don't believe she is surgical.


Brian E. Dalton, M.D.
BED/mla

**OFFICE NOTE**          07/02/02

**RE: EVELYN McKINLEY**

The patient follows up.  She's been off work since 5-14.  She's been in the E.R. on two occasions.  She's seen Dr. Wagamon and had morphine injections.  Last bout was about two weeks ago.

Past medical history is changed.  She did see Dr. Rai who offered an epidural but she turned him down.  She saw Dr. Welsh, neurosurgeon in Pittsburgh, for a second opinion who scheduled her for a follow up MRI and a discogram.  Dr. Welsh by Ms. McKinley's account offered her surgery at the L4-5 level.

On exam, she has no weakness.  Her reflexes are normal.  She has some limitation in range of motion.

Repeat MRI was reviewed which reveals actual improvement of the central disc, a bulge at the L4-5 level.  The central canal is now widely patent.  There is a degenerative change at the 4-5 level.  She's had a discogram but there is no report of what happened with the discogram such as what the pressures were and how much was injected.  What is present is simply the plain x-ray of the discogram which shows the expected changes associated with degeneration at the L4-5 level but by any literature I've reviewed the appearance on discogram is the least helpful portion of the entire test and therefore is unhelpful in this situation.

**IMPRESSION:**  Low back pain.

**PLAN:**  I do not see a surgical lesion nor would I suggest surgical intervention in this case.  I've suggested a physiatry evaluation for rehab recommendations.  I don't believe the patient will be able to go back to the heavy duty mechanic position, and since she has continued complaints of back pain, it would be best to avoid activities that require heavy lifting and twisting such as her mechanics job, so she stands the least chance of exacerbating her condition.  I'm going to refer her to Dr. Wheeling for a physiatry evaluation and see her in follow up on a prn basis.


Brian E. Dalton, M.D.
BED/dtf

 University of Pittsburgh Physicians

*Part of*
*UPMC Health System*

*Department of Neurological Surgery*

July 31, 2002

UPMC Presbyterian
Suite B-400
200 Lothrop Street
Pittsburgh, PA 15213-2582
412-647-3685
Fax: 412-647-5559

**L. Dade Lunsford, MD**
*Chairman*

**Administration**
David J. Bissonette, PA-C, MBA
*Assistant Chairman*

F         Tumors
   ; Kondziolka, MD
   . Lunsford, MD
lan    .allack, MD

**Clinical Neurophysiology**
R. J. Sclabassi, MD, PhD
*Chief*
Jeffrey Balzer, PhD
Donald J. Crammond, PhD
Donald N. Krieger, PhD
Mingui Sun, PhD

**Community Based**
Michael Rutigliano, MD, MBA

**Cranial Nerve Disorders**
Amin Kassam, MD
*Chief*
Michael B. Horowitz, MD
Howard Yonas, MD

**Image-Guided**
Douglas Kondziolka, MD
L. Dade Lunsford, MD
Ann Maitz, MSc

**Pain Management**
   f. Moossy, MD

   .ric and Epilepsy
   and Albright, MD
*Chief*
P. David Adelson, MD
Ian F. Pollack, MD

**Skull Base/Minimally Invasive**
Amin Kassam, MD
Michael Horowitz, MD
William C. Welch, MD

**Spine**
William C. Welch, MD
*Chief*
Peter C. Gerszten, MD, MPH
Donald W. Marion, MD
John J. Moossy, MD

**Trauma**
Donald W. Marion, MD
*Chief*
C. Edward Dixon, PhD
Larry W. Jenkins, PhD

**Vascular**
Howard Yonas, MD
*Chief*
Michael B. Horowitz, MD
Amin Kassam, MD
Joseph T. King, Jr., MD
Edwin Nemoto, PhD
Ronda Pindzola, PhD

Robin Green, RN, MSN, CRRN, CCM
3628 Maple Street
Erie PA  16508

RE:    Evelyn McKinley
ID:     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
DOB:  01/10/61
Claim: 03-0259445

Dear Ms. Green:

   Thank you for your letter of July 23, 2002.  I have no updated medical findings. All that I have is my note of May 23, 2002 and a subsequent letter to Mrs. McKinley of June 16, 2002.  In the letter, I told her that if she had pain during the L4-5 injection, she could consider surgery.  Surgery would be an interbody fusion.  I agree with Dr. Dalton in that I am not certain as to how much of a positive response she would have to the surgery.  Should she elect to undergo the surgery, the surgical treatment would be an interbody fusion  at at least L4-5 the rationale being the assumption that she has discogenic back pain which has been shown to be fairly effectively treated with interbody fusion.  The postop rehabilitation plan would require physical therapy and probably at least a year off of work before she were able to perform heavy duty labor. She might be able to return to a light duty or sedentary job within six months.  Enclosed is her work form.

Sincerely,

William C. Welch, MD, FACS
Associate Professor, Departments of
Neurological Surgery, Orthopaedic Surgery,
and Rehabilitation Science and Technology
Director, Spine Specialty Center
Director, Neurological Spine Services

WCW/pak

 **University of Pittsburgh Physicians**

*Part of*
*UPMC Health System*

*Department of Neurological Surgery*

August 15, 2002

**Neurological Spine Services**

UPMC Presbyterian, Suite B-400
200 Lothrop Street
Pittsburgh, PA 15213-2582
Patient Office: 412-647-6773
Clinical Fax: 412-647-5559
Academic Offices:
412-647-0958 or
412-647-0987
Academic Fax: 412-647-0989
http://www.neuronet.pitt.edu

ʰiam C. Welch, MD, FACS
ːtor

David P. Adelson, MD
Peripheral Nerve Injuries,
Pediatric Spinal Practice and
Brachial Plexus Injuries

Peter C. Gerszten, MD, MPH
Minimally Invasive
and Spinal Oncology

Amin Kassam, MD, FRCS(C)
Craniocervical Junction Disorders

Joseph T. King, Jr., MD, MSCE
General Spinal Practice and
Outcomes Research

John J. Moossy, MD
ːcal Pain Management
ːheral Nerve Disorders and
ː ːral Spine Practice

Art Nestler, RN
Clinical Nurse

Patricia Kelly, CMA
Administrative Assistant

Jennifer Daugherty
Clinical Secretary

Luis L. Gomez, M.D.
505 Poplar Street
Meadville PA 16335-3057

RE:    Evelyn McKinley
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

Dear Dr. Gomez:

I saw Evelyn McKinley in the neurosurgery offices today in follow-up. Her symptoms are unchanged. The discogram was consistent with L4-5 degenerative disc disease with subsequent pain following the injection.

I read Dr. Dalton's note provided to my by Mrs. McKinley. I told Mrs. McKinley she could consider anterior lumbar interbody fusion. I went over many of the same issues that Dr. Dalton covered with her. I by no means guaranteed her success. She understands the proposed surgery, the risks, potential benefits, surgical and non-surgical alternatives. She requests that we proceed. We will do so at her convenience. We will keep you informed of her progress.

Thank you for allowing us to participate in her care.

Sincerely,

William C. Welch, M.D.
Associate Professor

WCW/jel #26582

xc:    Brian E. Dalton, M.D. Modern Tool Square 333 State Street Suite 206 Erie PA 16507-1450
David A. Vermeire, M.D. 2213 Shenango Valley Freeway Hermitage PA 16148
Rade B. Vukmir, M.D., J.D. Director, Emergency Services UPMC Northwest One Spruce Street Franklin PA 16323

0029

# University of Pittsburgh Physicians

*Part of*
*UPMC Health System*

*Department of Neurological Surgery*

October 17, 2002

**Neurological Spine Services**

UPMC Presbyterian, Suite B-400
200 Lothrop Street
Pittsburgh, PA 15213-2582
Patient Office: 412-647-6773
Clinical Fax: 412-647-5559
Academic Offices:
412-647-0958 or
412-647-0987
Academic Fax: 412-647-0989
http://www.neuronet.pitt.edu


V    m C. Welch, MD, FACS
         or

David P. Adelson, MD
Peripheral Nerve Injuries,
Pediatric Spinal Practice and
Brachial Plexus Injuries

Peter C. Gerszten, MD, MPH
Minimally Invasive
and Spinal Oncology

Amin Kassam, MD, FRCS(C)
Craniocervical Junction Disorders

Joseph T. King, Jr., MD, MSCE
General Spinal Practice and
Outcomes Research

John J. Moossy, MD
      cal Pain Management
      eral Nerve Disorders and
General Spine Practice

Art Nestler, RN
*Clinical Nurse*

Patricia Kelly, CMA
*Administrative Assistant*

Jennifer Daugherty
*Clinical Secretary*

Luis L. Gomez, M.D.
505 Poplar Street
Meadville PA 16335-3057

          RE:    Evelyn L. McKinley
                 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

Dear Dr. Gomez:

      We had the pleasure of seeing Evelyn McKinley in the neurosurgical office today in followup to her anterior L4-5 interbody fusion performed on September 16, 2002. Today in the office, Mrs. McKinley states that she still experiences mostly moderate right-sided low back pain. She has occasional bilateral achy-type pain in her legs. She denies any numbness. She has had some constipation problems, handled usually with laxatives or stool softeners. She denies any bladder problems, fevers, sweats, or chills. Currently, she is able to walk at least one-quarter mile a day.

      Her current medications are Ditropan, Zoloft, Percocet, and stool softener. She has no known allergies.

      On physical examination, she is a 41-year-old, well-developed woman who presents in no acute distress. Neurological examination shows normal mentation and speech. Her gait is steady and coordinated, however, slow and cautious. Her abdominal incision has healed nicely. There is no evidence of infection. Sensory is preserved. Motor examination is 5/5 with the exception of bilateral iliopsoas being 5-/5. Deep tendon reflexes are 2+ throughout and symmetrical.

      Overall, we are at this one-month period. We are quite encouraged by Mrs. McKinley's early recovery. We have told her to increase her ambulation daily. We have given her a refill on her Percocet and told her we will see her back in three months with with lumbar spine films, flexion and extension to evaluate her fusion. We will keep you informed of her progress.

      Thank you for allowing us to participate in her care.

              Sincerely,

William C. Welch, M.D.
Associate Professor

Geraldine Guman, CRNP
Department of Neurological Surgery

GG/cap
#28111


UPMC | University of Pittsburgh Medical Center

*University of Pittsburgh Physicians*
*Department of Neurological Surgery*

⑥

October 17, 2005

Neurological Spine Services

UPMC Presbyterian
Suite B-400
200 Lothrop Street
Pittsburgh, PA 15213-2582

*Patient Offices:*
Dr. Welch: 412-647-6773
Fax: 412-647-6559
Dr. Gerszten: 412-647-5644
Fax: 412-647-0335
Dr. Moossy: 412-647-0090
Fax: 412-647-5559
Dr. Spiro: 412-647-7614
Fax: 412-647-1778

*Academic Offices:*
Dr. Welch: 412-647-0187
Dr. Gerszten: 412-647-0958
Dr. Moossy: 412-647-0060
Dr. Spiro: 412-647-3020
Academic Fax: 412-647-0983

http://www.neurosurgery.pitt.edu

William C. Welch, MD, FACS
*Chief*
*Neurological Surgery*
*UPMC Presbyterian*

*Director*
*Neurological Spine Services*

Peter C. Gerszten, MD, MPH
*Minimally Invasive and*
*Spinal Oncology*

John J. Moossy, MD
*Surgical Pain Management,*
*Peripheral Nerve Disorders,*
*and General Spine Practice*

Richard M. Spiro, MD
*Complex and Minimally Invasive*
*Spine Surgery*

Art Nestler, RN
*Clinical Nurse*

Patricia Kelly, CMA
*Administrative Assistant*

Jocelyn A. Bulger
*Administrative Assistant*

Jennifer Daugherty
*Clinical Secretary*

Melissa Persinger
*Clinical Secretary*

Ju Karousky, RN
*Certified Clinical Research*
*Coordinator*

Ashlea Justice
*Research Project Coordinator*

Yin Cheng, PhD
*Long Assistant Professor*
*Director*
*Rich Biomechanical*
*Research Research Laboratory*

Anne Jones
*Registered Nurse*

Neal A. Sanders
1924 North Main Street
Butler, PA 16001

RE:        Evelyn McKinley

Dear Mr. Sanders:

I reviewed my notes on Ms. McKinley. I did send her a letter on March 5, 2003 allowing her to return to part-time, light-duty type job effect effective March 16, 2003.

Prior to this, specifically between 2001 and 2004, I could not comment before I saw Ms. McKinley on May 23, 2002. When I saw her on that date, she had a disc herniation at L4-5 on the right with degenerative disc disease. It is my understanding that she had worked from November 14, 2001 to May 14, 2002. From the time that I saw Ms. McKinley on May 23, 2002 to the time that I performed surgery on her on September 16, 2002 she could have been on sedentary work. She was totally disabled from September 16, 2002 to a part-time, light-duty job effective March 16, 2003. I had sent her a prescription on February 6, 2003 advising that she would be off work for eight weeks and then may return to sedentary work with a 10-pound weight limit, which would have been May of 2003. When I saw her again on May 22, 2003, she did not feel that the surgery had provided her with any pain relief. Her fusion looked good. I told her to consider placement of a Morphine pump and I told her that she could perform a sedentary job. I made no specific work comments on October 9, 2003, but I would have released her to at least a sedentary type job anyway.

If I can be of any further assistance, please do not hesitate to contact me.

Sincerely,

*[signature]*

William C. Welch, MD, FACS, FICS
Peter E. Sheptak, Professorship in Neurological Surgery
Chief, Department of Neurological Surgery, UPMC Presbyterian
Professor, Departments of
Neurological Surgery, Orthopaedic Surgery,
and Rehabilitation Science and Technology
Director, Neurological Spine Services
Co Director, Welch Neurological Research Laboratory

# University of Pittsburgh Physicians

*Department of Neurological Surgery*

February 6, 2003

**Neurological Spine Services**

UPMC Presbyterian
Suite B-400
200 Lothrop Street
Pittsburgh, PA 15213-2582
Patient Offices: 412-647-6773
Clinical Fax: 412-647-5559
Academic Offices:
412-647-0958 or
412-647-0987
Academic Fax: 412-647-0989
http://www.neuronet.pitt.edu

W*   m C. Welch, MD, FACS
C
Neurological Surgery
UPMC Presbyterian

*Director*
Neurological Spine Services

David P. Adelson, MD
Peripheral Nerve Injuries,
Pediatric Spinal Practice and
Brachial Plexus Injuries

Peter C. Gerszten, MD, MPH
Minimally Invasive and Spinal
Oncology

Amin Kassam, MD, FRCS(C)
Craniocervical Junction
Disorders

Joseph T. King, Jr., MD,
M**GE
      ral Spinal Practice and
C.*comes Research

John J. Moossy, MD
Surgical Pain Management
Peripheral Nerve Disorders and
General Spine Practice

Art Nester, RN
Clinical Nurse

Patricia Kelly, CMA
Administrative Assistant

Jennifer Daugherty
Clinical Secretary

Luis L. Gomez, M.D.
505 Poplar Street
Meadville PA 16335-3057

RE:   Evelyn McKinley
      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

Dear Dr. Gomez:

We had the pleasure of seeing Ms. Evelyn McKinley in the neurosurgical office today in follow-up to her anterior lumbar interbody fusion at L4-5, utilizing cages, performed in September 2002. Today Ms. McKinley states she experiences mostly moderate low back pain but it can still be severe at times. She has an achy-type of leg pain, especially in her feet. She denies any numbness. She does experience occasional constipation but denies any bladder problems. She also has had a repair of her right carpal tunnel performed two days ago by Dr. Smart. Current medications include Vicodin where she may take as many as two to four a day and a muscle relaxant. She has no known allergies.

On physical examination she is a 41-year-old well-developed woman who presents in no acute distress. Her anterior lumbar interbody fusion incision has healed nicely. There was evidence of a small central sterile suture abscess in the center of her suture line. Straight leg raise test is negative. Sensation is preserved. Motor examination is within normal limits as are deep tendon reflexes.

Review of her lumbar spine films performed January 23, 2003, shows evidence of a solid fusion at L4-5.

Overall, we still continue to be quite pleased with Ms. McKinley's recovery following her anterior lumbar interbody fusion procedure. We would like her to obtain a fine cut lumbar CT scan. We have also given her a script for physical therapy and advised her to be evaluated by a local general surgeon who may excise her suture abscess. Again, there is no infection noted at her suture line. We would like to see her back in the office in six months. We told her she is to be off work for at least the next eight weeks and then she may return to sedentary work with a ten pound weight limit. We will keep you informed as to her progress.

Thank you for allowing us to participate in her care.

Sincerely,

William C. Welch, M.D.
Associate Professor
Chief, Neurological Surgery

Geraldine Guman, CRNP
Department of Neurological Surgery

GG/idb
#30718

# University of Pittsburgh Physicians

*Part of UPMC Health System*

## Department of Neurological Surgery

March 5, 2003

**Neurological Spine Services**

UPMC Presbyterian
Suite B-400
200 Lothrop Street
Pittsburgh, PA 15213-2582
Patient Offices: 412-647-6773
Clinical Fax: 412-647-5559
Academic Offices:
412-647-0958 or
412-647-0987
Academic Fax: 412-647-0989
http://www.neuronet.pitt.edu

V       C. Welch, MD, FACS
Cr
Neurological Surgery
UPMC Presbyterian

*Director*
Neurological Spine Services

David P. Adelson, MD
Peripheral Nerve Injuries,
Pediatric Spinal Practice and
Brachial Plexus Injuries

Peter C. Gerszten, MD, MPH
Minimally Invasive and Spinal
Oncology

Amin Kassam, MD, FRCS(C)
Craniocervical Junction
Disorders

Joseph T. King, Jr., MD,

ral Spinal Practice and
Outcomes Research

John J. Moossy, MD
Surgical Pain Management
Peripheral Nerve Disorders and
General Spine Practice

Art Nester, RN
Clinical Nurse

Patricia Kelly, CMA
Administrative Assistant

Jennifer Daugherty
Clinical Secretary

Mrs. Evelyn McKinley
805 French Creek Road
Utica PA 16362

Dear Mrs. McKinley:

Good news!  The February 11, 2003 CT scan from UPMC Northwest shows what appears to be a solid fusion at L4-5.  I think that it would be safe for you to return to a part-time, light-duty type job effective March 16, 2003.

I would be happy to review this with you.  We should obtain x-rays in the fall of 2003, to document this solid fusion.

Sincerely,

William C. Welch, M.D.
Associate Professor

WCW/cap



DEPOSITION EXHIBIT
McKinley 7
11/18/05 JY



# University of Pittsburgh Physicians

*Part of*
*UPMC Health System*

*Department of Neurological Surgery*

May 22, 2003

**urological Spine Services**

PMC Presbyterian
uite B-400
00 Lothrop Street
itsburgh, PA 15213-2582
atient Offices: 412-647-6773
linical Fax: 412-647-5559
cademic Offices:
12-647-0958 or
12-647-0987
cademic Fax: 412-647-0989
ttp://www.neuronet.pitt.edu

William C. Welch, MD, FACS
Chief
Neurological Surgery
JP          resbyterian

Director
Neurological Spine Services

David P. Adelson, MD
Peripheral Nerve Injuries,
Pediatric Spinal Practice and
Brachial Plexus Injuries

Peter C. Gerszten, MD, MPH
Minimally Invasive and Spinal
Oncology

Amin Kassam, MD, FRCS(C)
Craniocervical Junction
Disorders

J      h T. King, Jr., MD,
M   C
General Spinal Practice and
Ou    mes Research

Jo    J. Moossy, MD
Surgical Pain Management
Peripheral Nerve Disorders and
General Spine Practice

Ari Nester, RN
Clinical Nurse

Patricia Kelly, CMA
Administrative Assistant

Jennifer Daugherty
Clinical Secretary

Luis L. Gomez, M.D.
505 Poplar Street
Meadville PA 16335-3057

RE:   Evelyn McKinley
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

Dear Dr. Gomez:

I saw Evelyn McKinley in the neurosurgery office today for follow up of her L4-5 anterior lumbar interbody fusion on December 16, 2002. She does not feel that the surgery has provided her with any relief of pain. She notes twitching in her lower back and tingling and swelling in her feet. She has buttock and hip pain. She did receive physical therapy on February 2003, and this has helped her somewhat. She has not received any advice from a physiatrist. Her pain medications include Ultram and Vicodin. She tells me that these do not provide her with relief of pain. Her other medications include Celebrex and Zoloft.

On examination, Ms. McKinley appears to be in good health. She does seem to be in pain. Lumbar movements are limited because of pain. Strength and sensation is grossly intact.

Her last set of films look quite good.

I told Ms. McKinley that I thought she would benefit with physical medicine and a rehabilitation consult. I told her she may wish to consider placement of a Morphine pump. She will get x-rays today. I told her she could perform a sedentary job which I mean lifting a limit of 10 pounds, and she may need to change position as required for comfort ( this may include sitting, standing, or walking). I will see her again in about six months or so.

Thank you for having allowed me to participate in her care.

Sincerely,

William C. Welch, M.D.
Associate Professor
Chief, Neurological Surgery

WCW/cap  #33380

xc:   Robin Green, RN, MSN,CRRN, CCM VRS Inc. 3628 Maple Street Erie PA 16508

# University of Pittsburgh Physicians

*Part of*
*UPMC Health System*

*Department of Neurological Surgery*

July 21, 2003

Neurological Spine Services

UPMC Presbyterian
Suite B-400
200 Lothrop Street
Pittsburgh, PA 15213-2582
Patient Offices: 412-647-6773
Clinical Fax: 412-647-5559
Academic Offices:
412-647-0958 or
412-647-0987
Academic Fax: 412-647-0989
http://www.neuronet.pitt.edu

...m C. Welch, MD, FACS
C...f
Neurological Surgery
UPMC Presbyterian

*Director*
Neurological Spine Services

David P. Adelson, MD
Peripheral Nerve Injuries,
Pediatric Spinal Practice and
Brachial Plexus Injuries

Peter C. Gerszten, MD, MPH
Minimally Invasive and Spinal
Oncology

Amin Kassam, MD, FRCS(C)
Craniocervical Junction
Disorders

Joseph T. King, Jr., MD,
...E
...eral Spinal Practice and
Outcomes Research

John J. Moossy, MD
Surgical Pain Management
Peripheral Nerve Disorders and
General Spine Practice

Art Nester, RN
Clinical Nurse

Patricia Kelly, CMA
Administrative Assistant

Jennifer Daugherty
Clinical Secretary

Ms. Evelyn L. McKinley
805 Frenchcreek Road
Utica PA 16362

Dear Ms. McKinley:

Thank you for sending me the June 20, 2003 lumbar x-rays. To my interpretation, these studies show a solid fusion at L4-5. This is, of course, excellent news! It implies that your fusion is quite solid. There is a cervical x-ray done as well on the same date which demonstrates a solid fusion at C5-6. There are hip films available for review. The official report revealed they were normal.

Sincerely,

William C. Welch, M.D.
Associate Professor
Chief, Neurological Surgery

WCW/cap

**DEPARTMENT OF THE ARMY**
EQUIPMENT CONCENTRATION SITE 103(G)
6467 MIKE WOOD BOULEVARD
CONNEAUT LAKE, PENNSYLVANIA 13616

REPLY TO
ATTENTION OF

*24 JUNE 02*

MEMORANDUM FOR Department of the Army, 99th Regional Support Command,
ECS 103(G), ATTN: Ms. Evelyn L. McKinley, 6467 Mike
Wood Boulevard, Conneaut Lake, PA  13616

SUBJECT:  Request for Medical Documentation

1.  This memorandum concerns your ability to perform the work of
your officially assigned position of Heavy Mobile Equipment
Repairer (HMER), WG-5803-08.  You have not been working in your
officially assigned position since 19 November 2001.  You have
been unofficially assigned to perform light duty due to medical
reasons.  However, your assignment to light duty was done on a
temporary basis with the full intent to return you to your HMER
position.  The last statement, dated 21 February 2002, you
provided to me from your physician, Brian Dalton, MD, was very
vague indicating you should continue with the current physical
restrictions - sedentary - indefinitely.  The statement also
indicated an anticipation of an eventual increase in work duties;
yet, it also stated that you would probably never return to your
position as a HMER.  The statement did not identify any potential
accommodations that would allow you to perform the duties of your
HMER position.  I cannot afford to permanently have you assigned
to perform light duty assignments.

2.  In accordance with the provisions set forth in the Code of Federal
Regulations (CFR) 339.104, I am requesting that you provide current
medical documentation, signed and dated from your physician to assist
me in determining your current status and assessing your capability of
performing the full range of duties of your assigned position.  I have
enclosed a list of questions (enclosure 1) for your physician to
answer with respect to your duties as described in your position
description (enclosure 2).  Also enclosed is a Standard Form 78,
Certificate of Medical Examination (enclosure 3), with the functional
requirements and environmental factors circled which are applicable to
your position.  Your physician should complete page 2 of this form
indicating any limiting conditions.  It is of particular importance
that current information be provided concerning the diagnosis of your
condition, the prognosis for full or partial recovery, specific
medical restrictions related to your ability to perform the duties of
your position, and any accommodations which would allow you to perform
the essential functions of your position.  Any medical documentation
that you provide will be reviewed by appropriate agency medical and/or
management officials.

ACKNOWLEDGE RECEIPT COPY

0001039

SUBJECT:   Request for Medical Documentation

3.   The physician's response should be provided to me not later than 30 calendar days following your receipt of this memorandum.   I find it necessary at is time to advise you that if you fail to comply with this request for medical documentation, I would have no alternative but to render employment decisions based on the information currently available.

4.   You may be eligible for disability retirement.   For more information on this subject, please contact the Army Benefits Call Center at 1-877-276-9287.

5.   Should you have any questions concerning this memorandum, you may contact me at 814-382-2893.   If you have any questions concerning the personnel procedures governing this matter, you may contact Ms. Linda O'Neil, Personnel Management Specialist, Fort McCoy CPAC, at (608) 388-3882 or DSN 280-3882.

6.   You are requested to acknowledge receipt of this memorandum by signing and dating the copy provided for that purpose and returning it to me.

Encls
as

ALBERT P. MORELL
ECS Manager

I HEREBY ACKNOWLEDGE RECEIPT OF ORIGINAL OF THIS LETTER.

SIGNATURE _Evelyn L. McKinley_

DATE _July 16, 2002_

2

0001040



REPLY TO
ATTENTION OF

**DEPARTMENT OF THE ARMY**
EQUIPMENT CONCENTRATION SITE 103(G)
6467 MIKE WOOD BOULEVARD
CONNEAUT LAKE, PENNSYLVANIA 13616

MEMORANDUM FOR Department of the Army, 99th Regional Support Command,
ECS 103(G), ATTN: Ms. Evelyn L. McKinley, 6467 Mike
Wood Boulevard, Conneaut Lake, PA  13616

24 February 2003

SUBJECT:  Second Request for Medical Documentation

1.  This memorandum concerns your ability to perform the work of
your officially assigned position of Heavy Mobile Equipment
Repairer (HMER), WG-5803-08.  You have not been working in your
officially assigned position since 19 November 2001.  You have
been unofficially assigned to perform light duty due to medical
reasons.  However, your assignment to light duty was done on a
temporary basis with the full intent to return you to your HMER
position.  On 16 July 2002, I presented you with a formal request
for medical documentation.  In response to my request, you
provided documentation from Luis Gomez, MD, dated 22 July 2002,
that indicated you had a "disc herniation w/annular tear apt" and
that you were waiting to have surgery and would need to recover
before a prognosis could be rendered.  The last statement you
provided to me from your physician, William C. Welch, MD, dated
17 October 2002, was very vague in that it indicated you had
lumbar fusion and would be off work for at least 6 months.  The
statement did not indicate when the surgery was performed nor did
it identify any potential accommodations that would allow you to
perform the duties of your HMER position.  I cannot afford to
permanently have you assigned to perform light duty assignments.
As a result, I am requesting that you provide me with updated
medical documentation to assist me in making employment
determinations.

2.  In accordance with the provisions set forth in the Code of Federal
Regulations (CFR) 339.104, I am requesting that you provide current
medical documentation, signed and dated from your physician to assist
me in determining your current status and assessing your capability of
performing the full range of duties of your assigned position.  I have
enclosed a list of questions (enclosure 1) for your physician to
answer with respect to your duties as described in your position
description (enclosure 2).  Also enclosed is a Standard Form 78,
Certificate of Medical Examination (enclosure 3), with the functional
requirements and environmental factors circled which are applicable to
your position.  Your physician should complete page 2 of this form
indicating any limiting conditions.  It is of particular importance
that current information be provided concerning the diagnosis of your

0001004

SUBJECT:   Second Request for Medical Documentation

condition, the prognosis for full or partial recovery, specific medical restrictions related to your ability to perform the duties of your position, and any accommodations which would allow you to perform the essential functions of your position.  Any medical documentation that you provide will be reviewed by appropriate agency medical and/or management officials.

3.   The physician's response should be provided to me not later than 15 calendar days following your receipt of this memorandum.  I find it necessary at is time to advise you that if you fail to comply with this request for medical documentation, I would have no alternative but to render employment decisions based on the information currently available.

4.   You may be eligible for disability retirement.  For more information on this subject, please contact the Army Benefits Call Center at 1-877-276-9287.

5.   Should you have any questions concerning this memorandum, you may contact me at 814-382-2893.  If you have any questions concerning the personnel procedures governing this matter, you may contact Ms. Linda O'Neil, Personnel Management Specialist, Fort McCoy CPAC, at (608) 388-3882 or DSN 280-3882.

6.   You are requested to acknowledge receipt of this memorandum by signing and dating the copy provided for that purpose and returning it to me.


Encls
as

*Albert P. Morell*
ALBERT P. MORELL
ECS Manager

0001005



**DEPARTMENT OF THE ARMY**
EQUIPMENT CONCENTRATION SITE 103(G)
6467 MIKE WOOD BOULEVARD
CONNEAUT LAKE, PENNSYLVANIA 13616

REPLY TO
ATTENTION OF

6 May 2003

MEMORANDUM FOR Department of the Army, 99th Regional Support Command, ECS 103(G), ATTN: Ms. Evelyn L. McKinley, 6467 Mike Wood Boulevard, Conneaut Lake, PA 13616

SUBJECT:   Notice of Proposed Removal

1.   I hereby propose to remove you from your position of Heavy Mobile Equipment Repairer, WG-5803-08, and to terminate your employment in the Federal Service for inability to do the work of your position.  Should this proposed removal be sustained, it would become effective no earlier than 30 calendar days from the date you receive this notice.  During the notice period fixed by this proposal, you will remain in a duty status. Any absence during this period will be charged to the appropriate leave category.

2.   The following information is provided in support of the charge specified above:

   a.   You have been unable to perform the full range of duties of your Heavy Mobile Equipment Repairer, WG-5803-08, position since 5 April 2001. On 19 November 2001 you returned to duty and were unofficially assigned to perform light duty due to medical reasons.  Your assignment to light duty was done on a temporary basis with the full intent to return you to your Heavy Mobile Equipment Repairer position.  On 14 May 2002, you returned to a leave without pay status and have been absent from duty since that date.

   b.   On 16 July 2002, you were presented with a formal request for medical documentation.  In response to the request, you provided medical documentation from Luis Gomez, MD, dated 22 July 2002, that indicated you had a "disc herniation w/annular tear apt" and that you were waiting to have surgery and would need to recover before a prognosis could be rendered.  You also provided a medical statement from your physician, William C. Welch, MD, dated 17 October 2002, which was very vague in that it indicated you had lumbar fusion and would be off work for at least 6 months.  The statement did not indicate when the surgery was performed nor did it identify any potential accommodations that would allow you to perform the duties of your Heavy Mobile Equipment Repairer position.

   c.   On 26 February 2003, you received a second formal request for medical documentation.  In response to this request, you provided medical documentation from Elliot Michel, MD, dated 5 March 2003 that indicated the prognosis for your return to full

0001228

SUBJECT:    Notice of Proposed Removal

duties was poor.  You also provided medical documentation from
William C. Welch, MD, dated 12 March 2003, stating that you had
lower back pain and were currently significantly disabled due to
the pain.  The documentation further indicated that you would
probably not be able to return to pre-injury status.  The
documentation also identified that you were expected to be released
to perform sedentary or light duty work on 1 May 2003 with a 10-
pound weight restriction.

    d.  In attempts to provide you with continued gainful
employment, checks were also made for vacant positions in the local
commuting area in which you could be placed and for which you would
otherwise be qualified that did not have the physical requirements
of the Heavy Mobile Equipment Repairer position.  There were no
other positions available.

    e.  I have also considered that you have over thirteen years of
Federal Service.

3.  This action has been proposed only after thorough review and complete
consideration of the facts and circumstances in this case.  Your
continued prolonged absence from the worksite places an undue hardship
upon your coworkers in the scheduling and accomplishing of work.  While I
am sympathetic towards the fact that you may be experiencing considerable
medical problems, I have an obligation to meet our mission.  Your
prolonged absence with no definite expectation if/when you will ever be
able to return to your Heavy Mobile Equipment Repairer duties on a full
time basis leaves me no alternative but to propose this action.  This
action is not considered a disciplinary action, and is proposed solely as
a result of your inability to perform the duties of your position and to
promote the efficiency of the service.

4.  You have the right to reply to this proposal.  You may reply in
person, in writing, or both, stating why this proposed action should not
be taken.  You may submit affidavits and other documentary evidence in
support of your reply.  Your reply, if any, should be made to Mr. John
McCandless, Supervisory Equipment Specialist, Headquarters, 99th Regional
Support Command, G4, 99 Soldiers Lane, Coraopolis, PA 15108-2550,
telephone number 412-604-8378, within 15 calendar days of your receipt of
this memorandum.  If more time is needed for the preparation of your
reply, you must request an extension in writing, explaining why you need
more time; this must be done within the stated time frame.  Your reply
will be given full and fair consideration.  Whether you reply or not, you
will be provided a written decision.

SUBJECT:    Notice of Proposed Removal

5.   You may be represented in this matter by any representative of your choice, unless that individual's activity as representative could cause a conflict of interest or position, unreasonable costs to the government, or a conflict with the priority needs of the government.   Your written designation of representative and any change in representative must be provided to Mr. McCandless.

6.   You have the right to review the material relied upon to support this proposed action, including documents and pertinent regulations.   You may contact Ms. Linda O'Neil, Human Resources Specialist, Civilian Personnel Advisory Center, Fort McCoy, at (608)388-3882 or DSN 280-3882 if you wish to review this material.   You and your representative, if he/she is an Army employee and both of you are in a work status, may request a reasonable amount of official time to prepare and present your reply. Arrangements for the use of any official time for this purpose must be made with me in advance.   Your representative must make arrangements for the use of official time for this purpose with his/her supervisor.

7.   You are requested to acknowledge receipt of this notice by signing and dating the copy provided for that purpose.   Your signature does not mean that you agree or disagree with its contents, or will it serve to waive any rights mentioned herein.   Failure to sign will not void the contents of this notice.


ARNOLD D. FAIRBANKS
ECS Manager

3

0001230

**DEPARTMENT OF THE ARMY**
EQUIPMENT CONCENTRATION SITE 103 (G)
6467 MIKE WOOD BLVD
CONNEAUT LAKE, PENNSYLVANIA 13616

8 April 2003

MEMORANDUM FOR: Headquarters 99yh Regional Support Command,
ATTN: AFRC-CPA-PR (Mr. Joseph Sharkey) 99 Soldiers Lane. Coraopolis, Pennsylvania,
15108-2550

SUBJECT: Request removal from position of Ms. Evelyn L. McKinley, 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

1. Ms Evelyn L. McKinley incurred an on the job injury 2 April 2001. Ms.McKinley was placed
in a continuation of pay status from 5 Apr 2001 to 18 May 2001. 20 May 2001 she requested
Leave Without Pay and was placed in a workers compensation status until 18 Nov 2001. She
returned to work 19 Nov 2001 on restricted duty as sedentary work only, with a lifting restriction
of 10 pounds or less, no bending, squatting, twisting, kneeling, climbing or driving. Her
restrictions have not decreased since the inception of her injury. She was accommodated within
those restrictions until 14 May 02 at which time she returned to workers compensation status and
has not returned to work in any capacity to date.

2. The attached medical documentation reveals that there has been little or no improvement in
her condition and she would not be able to return to her HMER position. Ms. McKinley
attended Physical Therapy three days per week during the restricted period and has made no
forward progress. Based on the current medical documentation received from Drs. Welch and
Michaels, indicate the "inability to do the work required of the position"

3. This activity has no positions or restricted duty work remaining that Ms. McKinley can
perform within her physical limitations. On 22 Feb 03 Ms. McKinley stated that she was not
able to return to light duty at this time.

4. The bargaining unit for Ms. McKinley is NAGE, Local R3-112, 129 Cedar Hill Rd,
Baltimore, Md 21225. Phone: 410-789-6583.

5. Request removal from position of Ms. Evelyn McKinley for "inability to do the work required
of the position".

5. P.O.C. Mr. Albert P. Morell 814-382-2893/4192/6964

ALBERT P. MORELL
GS-12
ECS Manager

Encl

0001235

Management Copy



**DEPARTMENT OF THE ARMY**
HEADQUARTERS, 99TH REGIONAL READINESS COMMAND
99 SOLDIERS LANE
CORAOPOLIS, PENNSYLVANIA 15108-2550

REPLY TO
ATTENTION OF

AFRC-CPA-LG-SM-M

MEMORANDUM FOR Department of the Army, Equipment Concentration  Site
103(G), ATTN:  Ms. Evelyn L. McKinley, 6467 Mike Wood Boulevard, Conneaut
Lake, PA  13616

SUBJECT:  Notice of Decision on Proposed Removal

1.  I have thoroughly reviewed the facts and circumstances outlined in
the Notice of Proposed Removal that you received on 8 May 2003.  I also
considered your written reply dated 13 May 2003.  It is my decision that
the charge of inability to do the work of your position is supported by a
preponderance of evidence, is sustained, and warrants your removal from
the Federal service, effective 7 February 2004.  The Standard Form 50,
Notification of Personnel Action, documenting the removal will be
forwarded to you and a copy will be placed in your Official Personnel
Folder.

2.  In making my decision to effect your removal for the above reason, I
considered the following significant factors:

   a.  You have been unable to perform the full range of duties of your
Heavy Mobile Equipment Repairer, WG-5803-08, position since 5 April 2001.
You returned to duty on 19 November 2001 and were unofficially assigned
to perform light duty due to medical reasons.  On 14 May 2002, you
returned to a leave without pay status and have been absent from duty
since that date.

   b.  I considered your written reply, dated 13 May 2003, to the notice
of proposed removal.  In your reply, you indicated that you were able to
perform the duties of Heavy Mobile Equipment Repairer as long as you were
permitted the same light duty help as you were given 19 November 2001.
The light duty you were assigned in November 2001 was of a temporary
nature and assigned with the assumption that you would be able to return
to full performance of your duties.  The medical documentation that you
provided clearly reflects that you are physically unable to perform the
duties of a Heavy Mobile Equipment Repairer.

   c.  In an attempt to provide you with continued employment, a search
was conducted for available vacant positions for which you would qualify
and would be within your medical restrictions.  There were no such
positions available.

   d.  You have over thirteen years of Federal service to your credit
with a record of good performance prior to your absence.

0001265

AFRC-CPA-LG-SM-M
SUBJECT:  Notice of Decision on Proposed Removal

3.  The duties of your position are essential to the accomplishment of
our mission and must be performed on a regular, full-time basis.  Your
prolonged absence with no expectation of you returning to your Heavy
Mobile Equipment Repairer duties in the foreseeable future leaves me with
no alternative but to sustain your removal from federal service.  This
action is not considered disciplinary in nature, and is being taken
solely as a result of your inability to perform the duties of your
position and to promote the efficiency of the service.

4.  You have the right to appeal this decision to the Merit Systems
Protection Board (MSPB) or to grieve this decision under the applicable
negotiated grievance procedure.  You cannot do both.

    a.  If you decide to appeal this decision, your petition must be
filed no later than 8 March 2004, which is 30 calendar days after the
effective date of this action.  If the petition for appeal is filed
outside this time limit, the petitioner must file a motion for a waiver
of the time limit with the petition.  This motion must contain evidence
and argument that shows good cause for the untimely filing.  The petition
for appeal (and any motion for waiver of the time limit) must be filed in
writing with the Regional Director, U.S. Merit Systems Protection Board,
Northeastern Regional Office, U.S. Customhouse, Room 501, Second &
Chestnut Streets, Philadelphia, PA 19106.  Your appeal may be filed in
any format, including letter format, but must contain the information
prescribed at Section 1201.24(a) of the MSPB Practices and Procedures.
If you wish, you may use the Optional Form 283, MSPB Appeal Form to file
your appeal (enclosed).  The MSPB Practices and Procedures and the MSPB
Appeal Form can both be obtained at http://www.mspb.gov.  If you do not
have access to the Internet, the MSPB Practices and Procedures can be
faxed or mailed to you.

    b.  If you decide to grieve this decision, you may do so by filing a
grievance under the procedure negotiated between the 99th Regional
Support Command and the local bargaining unit.  In order for your
grievance to be considered, it must be submitted in accordance with the
procedures contained in the negotiated agreement and within the specified
time period.  You may contact your union representative to obtain further
information concerning the grievance procedure.

5.  You may be eligible to apply for a disability retirement.  For more
information on this subject, you may visit the ABC website at
.https://www.abc.army.mil or contact the Army Benefits Call Center at
1-877-276-9287.

0001266

AFRC-CPA-LG-SM-M
SUBJECT:  Notice of Decision on Proposed Removal

6.  If you have any questions concerning your rights relative to this action, you may contact Ms. Linda O'Neil, Human Resources Specialist, Military Technician Program Division, Civilian Personnel Advisory Center, Fort McCoy, Wisconsin at commercial (608) 388-3882 or DSN 280-3882.

7.  You are requested to acknowledge receipt of this memorandum by signing and dating the copy provided and returning it to me.   Your signature does not mean you agree or disagree with the content of this notice nor will it serve to waive any rights mentioned herein.  Failure to sign will not void the content of this notice.

Encl
as

JOHN C. McCANDLESS
Supervisory Equipment Specialist

I hereby acknowledge receipt of the original of this letter

_____        _____
Signature                                Date

3

0046

0001267

APR 23 2003

# FORMAL COMPLAINT OF DISCRIMINATION
For use of this form, see AR 690-800; the proponent agency is OSA

EQUAL EMPLOYMENT OPPORTUNITY
Fort McCOY, WI    Public Law 92-261.

**PRIVACY ACT STATEMENT (6 USC 552a)**

# ARMCO0403MAR...

| | |
|---|---|
| **Principle Purpose:** | Formal filing of allegation of discrimination because of race, color, religion, sex, handicap, age, national origin or reprisal. |
| **Routine Uses:** | This form and the information on this form may be used: (a) as a data source for complaint information for production of summary descriptive statistics and analytical studies of complaints processing and resolution efforts and may also be used to respond to general requests for information under the Freedom of Information Act; (b) to respond to requests from legitimate outside individuals or agencies (e.g., Members of Congress, The White House, and the Equal Employment Opportunity Commission (EEOC) regarding the status of the complaint of appeal; and (c) to adjudicate complaint or appeal. |
| **Disclosure:** | Voluntary; however, failure to complete all appropriate portions of this form may lead to rejection of complaint on the basis of inadequate data on which to determine if complaint is acceptable. |

1. NAME OF COMPLAINANT (Last, First, Middle Initial)
**McKinney, Evelyn, L**

2. VSSN   **169 54 6168**

4. ADDRESS (Include City, State, and ZIP Code)
**805 French Creek Road
Utica, PA 16362**

3a. HOME TELEPHONE NO   **814 437 4000**
3b. WORK TELEPHONE NO   **814-362-2893**

5. ARE YOU BEING REPRESENTED?
☒ a. Yes (Complete 5c)   ☐ b. No

5c. IF YES, NAME OF REPRESENTATIVE
**NEAL A. SANDERS, ESQ.**

6a. NAME OF ARMY ORGANIZATION AGAINST WHOM YOU BELIEVE DISCRIMINATED AGAINST YOU
**ECS 103(G) Dept of Army**

6b. ADDRESS OF ALLEGED DISCRIMINATION ORGANIZATION (Include City, State, and ZIP Code)
**US Dept Army ECS #103(G)
6467 Mike Wood Blvd
Conneaut Lake Pa 16316**

7. MAJOR ARMY COMMAND OF ACTIVITY YOU BELIEVE DISCRIMINATED AGAINST YOU
**99TH RSC**

8. DATE ON WHICH MOST RECENT ALLEGED DISCRIMINATION OCCURRED
**FEB 21/2003**

9. ARE YOU WORKING FOR THE FEDERAL GOVT.?
☒ a. Yes (Complete Items 10, 11 and 12)
☐ b. No (Skip to Item 13)

10. NAME OF AGENCY WHERE YOU ARE CURRENTLY EMPLOYED
**ECS 103(G) U of Army**

11. ADDRESS OF YOUR CURRENT EMPLOYER (Include City, State, and ZIP Code)
**Same As 6b.**

12a. TITLE OF YOUR CURRENT JOB
**HEAVY MOBILE EQUIPMENT Repairer OFF ON W/C — DOI — 4/2/01.**

12b. GRADE
**WG 8**

13. Reason you believe you were discriminated against (Check Below).

a. RACE (State your Race)

b. COLOR (State your Color)

c. RELIGION (State your Religion)

d. NATIONAL ORIGIN (State Natl. Origin)

e. HANDICAP
☐ Mental   ☒ Physical

f. SEX
☒ Female   ☐ Male

g. AGE (Specify Age)

h. REPRISAL   ✓ **FOR W/C claim**

14. I HAVE DISCUSSED MY COMPLAINT WITH AN EEO COUNSELOR (See Reverse)
☒ a. Yes (Complete 14c)   ☐ b. No

14c. IF YES, NAME OF COUNSELOR
**Judith Strain**

15. DATE OF FINAL INTERVIEW
**APRIL 8, 2003**

16. EXPLAIN SPECIFICALLY HOW YOU WERE DISCRIMINATED AGAINST (that is, treated differently from other employees or applicants, because of your race, color, religion, sex, national origin, age, mental or physical handicap, or reprisal.) (If your complaint involves more than one basis for your dissatisfaction, list each allegation separately and furnish specific, factual information in support of each.) (Use additional sheets, if necessary.)

(1) THREATENED WITH TERMINATION By ALBERT MORELL, Supervisor

(2) GIVEN UNREASONABLE DEADLINES TO FILE W/C UPDATES;

(3) FORCED TO WORK BEYOND W/C RESTRICTIONS

(4) FAILURE TO ACCOMMODATE - MOVEMENT OF WORK TELEPHONE,

(5) DON WETZEL POSITION NOT OFFERED TO CLAIMANT ye

17. LIST IN ITEM 20 THE NAMES OF YOUR WITNESSES AND WHAT FACTUAL INFORMATION EACH WILL BE EXPECTED TO CONTRIBUTE THROUGH HIS/HER TESTIMONY TO THE INVESTIGATION OF YOUR COMPLAINT.

18. WHAT SPECIFIC CORRECTIVE ACTION DO YOU WANT TAKEN ON YOUR COMPLAINT. (If more than one allegation is being made, state overall corrective action desired and any specific corrective action desired for each separate allegations.)

Claim; (b) Reimburse legal fees. Lons (c) STOP HARASSING me on my w/c
OTY POSITION OR COMPRABLE — now 5,500. (c) WETZEL LG
(D) NO TERMINATION.

DA FORM 2590-R, AUG 89    DA FORM 2590-R, DEC 86 IS OBSOLETE    USAPA V2.00


**2**

19. HAVE THE MATTERS LISTED IN ITEM 18 BEEN APPEALED TO THE MERIT SYSTEM PROTECTION BOARD OR FILED UNDER A NEGOTIATED GRIEVANCE PROCEDURE?

☐ a. Yes *Explain in Item 20)    ☒ b. No

20. REMARKS

TOM KARNS – TERMINATION THREATENED by MORELL UNREASONABLE DEADLINE Given By Morell IN WC CASE

Larry Gorby –
Brian Wilson – Claimant made to carry heavier property in excess of restrictions –

21. SIGNATURE OF COMPLAINANT

*Evelyn L. McKinley*

22. DATE THIS COMPLAINT FORM WAS SIGNED BY THE COMPLAINANT *(Month, day, year)*

4-23-03

*To be Completed by the Organization's EEOO*

I certify that: (1) The complainant has reaffirmed this complaint in my presence and has stated that the facts contained therein are, to the best of his/her knowledge, true; (2) a determined effort at informal resolution of this complaint failed to produce a solution satisfactory to the complainant; and (3) local management in the appropriate chain of command has been informed concerning the complaint and the submission in the above format.

23. SIGNATURE OF EEOO

*Sonya Clumpner*

24a. TYPED NAME AND TITLE OF EEOO
SONYA CLUMPNER - EEO DIRECTOR.

24b. ADDRESS OF EEOO
AFRC-CXE
2187 SOUTH J STREET, FORT McCOY, WI 54656-510

25. DATE COMPLAINT FILED WITH EEOO

APR 2 3 2003

26. TELEPHONE NO. OF EEOO PROCESSING COMPLAINT

(608) 388-3106/3107  DSN: 280-3106/3107

The matter(s) giving rise to the complaint will be coded using one or more of the following codes:

| CATEGORY | CODE | CATEGORY | CODE | CATEGORY | CODE |
|---|---|---|---|---|---|
| Appointment | (1) | Training | (9) | Reprisal | (17) |
| Promotion | (2) | Time & Attendance | (10) | Pay, Including Overtime | (18) |
| Reassignment | (3) | Retirement | (11) | Conversion to Full Time/ | |
| Separation/Termination | (4) | Assignment of Duties | (12) | Career Conditional | (19) |
| Suspension | (5) | Exam/Test | (13) | Reinstatement | (20) |
| Reprimand | (6) | Work Conditions | (14) | Awards | (21) |
| Evaluation/Appraisal | (7) | Harassment | (15) | And/Or Other (Specify) * | (22)* |
| Duty Hours | (8) | Sexual Harassment | (16) | *Accommodation* | |

27. Enter Code(s) for Matter(s) Giving Rise to the Complaint ➝  | 15 | 17 | *22 |

## INFORMATION CONCERNING THE PROCESSING OF YOUR COMPLAINT OF DISCRIMINATION

This form will be used only if you, as an Army employee or as an applicant for Federal employment, think you have been treated unfairly because of your race, color, religion, sex, national origin, age, mental or physical handicap, or reprisal. If you have any questions concerning the completion of this form, you may contact the Equal Employment Opportunity Officer *(EEOO)* at your activity.

Your written, formal complaint must be filed within 15 calendar days of the date of your final interview with the EEO counselor. If the matter has not been resolved to your satisfaction within 21 calendar days of your first interview with the EEO counselor and the final counseling interview has not been completed within that time, you have a right to file a complaint at any time thereafter up to 15 days after the final interview. Your written formal complaint must be filed within 15 calendar days of the date of your final interview with the EEO counselor. This time limit may be extended if you can give a good reason for not submitting the complaint within the 15 calendar day limit.

You may have a representative at all stages of the processing of your complaint. You or your representative should personally file your complaint with the EEOO of your activity.

If your complaint is accepted, you will have an opportunity to talk with an investigator from the U.S. Army Civilian Appellate Review Agency and to give him or her all the facts you have which you believe will support your complaint. If your complaint is rejected, you will be advised in writing of the reason/s and advised of the right to appeal. Upon completion of the investigation of your complaint, you will receive a copy of the investigator's report and an attempt will be made to resolve the complaint then.

If your complaint cannot be settled informally on the basis of the investigation, you may request a review of your record by the Department of the Army Director of Equal Employment Opportunity, or you may request a hearing at this stage. If a hearing is requested, it will be conducted by an administrative judge designated by the EEOC. The findings, analysis, and recommendations will be forwarded to the Director of EEO for decision. You will be advised by the Director of the decision and provided a copy of the case record.

If you are not satisfied with the Director's decision, you will have the right to appeal to the Office of Review and Appeals of the EEOC, P.O. Box 19848, Washington, D.C. 20036, within 20 calendar days after receipt of the decision.

Please be specific in stating the facts concerning your complaint in items 15 through 19.

REVERSE, DA FORM 2590-R, AUG 89

USAPA V2.00

# ECS#103 (G) Organization Chart



Albert Morell
Arnie Fairbanks

**Jimmie Keener**

- Larry Flynn
  - Allen Coccia
  - Robin Goucher
  - Evelyn McKinley
  - Jerry Rupert
  - Robert Zurasky
  - Joseph Kennedy
  - Ed Santiago

- Frank Supinski
  - Ivan McCoy
  - Larry Gorby
  - Bruce Myers
  - Ken Pratt
  - Brian Serafin
  - Roberty Aylsworth
  - Richard Sears

**Flo Kinch**

- Richard Shields
- Ron Davis
- Harry Barner
- John Barber
- Michael Platt
- Richard Rucci
- Robert Johnson
- Scott Phanco
- Pat Wahlenmayer
- Denys Smith
- Ron Sheats
- Brian Wilson
- Scott Miller

**Perry Wood**

- Eugene Ion
- Ed Stone
- Justin Ace
- Terry Bolger
- Troy Hinderliter
- Don Whetzel
- Richard Moss
- Carol Gold
- Keith Frese



DEPOSITION
EXHIBIT
McKinley 4
PENGAD 800-631-6989

# Position Description

**PD#:** DE10537
**Shred:** Varies

**Supply Technician**
**GS-2005-05**

**Replaces PD#:**

**Installation:** Varies

**Major Command:** Varies
**Region:** Varies

**Citation 1:** OPM PCS Supply Cler & Tech Series, GS-2005, May 92

**PD Library PD:** No
**COREDOC PD:** No

PLAINTIFF'S DEPOSITION EXHIBIT
GOMEZ
12/21/05

**Classified By:** Ft. McCoy CPO
**Classification Date:** 9/1/98

| | | |
|---|---|---|
| **FLSA:** | **Drug Test Required:** | **CIPMS PD:** |
| **Career Program:** | **Financial Disclosure Required:** | **Acquisition Position:** |
| **Functional Code:** | **Requires Access to Firearms:** Varies | **Interdisciplinary:** |
| **Competitive Area:** Varies | **Position Sensitivity:** Varies | **Target Grade/FPL:** 05 |
| **Competitive Level:** Varies | **Emergency Essential:** Varies | **Career Ladder PD:** |

MAJOR DUTIES

Performs various duties concerned with the requisitioning, receipt and control of supply items.

1. Prepares, reviews and edits requisitions for completeness, accuracy and compliance with regulations; assures stock numbers, prices, sources of supply, priorities and other data are correct through the use of Army Master Data File (AMDF), Supply Bulletins (SBs), supply letters, regulations, etc. Revises quantities ordered based on number of items on hand, and reviews records for possible substitution of items; recommends local purchase when appropriate. Contacts Supply Division, Maintenance Division, MATES, AMSAs, etc., for assistance in obtaining items not in stock. Selects and maintains appropriate document registers and document files, to include repair parts, expendables, Petroleum, Oils and Lubricants (POL), Property Book and unit shortages. Transcribes document register information (to include cost) to computer disk, for use by higher headquarters. Screens due-out reconciliation listing and prepares cancellation and follow up documents. Selects and monitors expendable items procured from Country Store and Self Service Supply Center (SSSC).
Approx. 25%

2. Researches stock, part or manufacturers number for hard to locate items. Conducts extensive and exhaustive searches for parts and information on certain parts and equipment. Locates urgent or critical shortage items. May be required to bypass the system by entering a specific code on the special request. Works from regulations that are general in nature. Adapts or applies precedents to new or unique situations.
Approx. 15%

3. Compares packing lists, receipt documents, bills of lading, inspection reports, and other documents with purchase orders or requisitions to verify accuracy of stock identification, quantity,

cost and other pertinent data. Prepares material receipt documentation for those shipments having no major discrepancies. Investigates receipt documents involving discrepancies such as: overages, substitutes, etc.; examines authorizations, charges, inspection reports, pricing guides, and other files to ascertain source of variance. Contacts inspection, purchasing and other organizations to gather information on discrepancies. Accepts or rejects material based on investigation and in accordance with standard procedures. Furnishes information to other personnel for continued investigation. Processes receipt transactions for completion of action.
Approx. 30%

4. Assists in physical inventory of repair parts. Computes reorder points and notes any special circumstances. Prepares inventory adjustments for discrepancies disclosed by physical inventories, transfer of material, location changes, condition changes, etc., investigates the activity (receipts, issues, etc.) on items by searching summaries, activity register, and other reference sources. Prepares inventory adjustments when the cause of discrepancy is determined. Prepares turn-in documents for obsolete or excess inventory.
Approx. 20%

5. Collects data for the preparation of Report of Survey. Maintains and prepares records, reports and files relative to work being performed. As necessary, assists Tools and Parts Attendants in the storage and issue of repair parts and special tools to shop repairmen.
Approx. 10%

Supports the strength maintenance effort of the unit to which assigned and the USAR by responding to questions concerning the USAR and referring individuals interested in the Reserve to appropriate recruiting and/or reenlistment authorities.

Performs other duties as assigned.

FACTOR 1. KNOWLEDGE REQUIRED BY THE POSITION - Level 1-4 - 550 POINTS

Position uses a knowledge of the Army supply system, mission, and program requirements to plan and accomplish work. Knowledge of applicable supply regulations, policies, and procedures are used to complete assignments and resolve typical operating problems. Knowledge of the inventory system is used to conduct periodic and special inventories to account for property.

FACTOR 2. SUPERVISORY CONTROLS - Level 2-2 - 125 POINTS

Works under general supervision. Assignments are given in terms of work priorities and general quality and quantity of work expected. The incumbent carries out recurring assignments independently within established policies, procedures and directives. New, difficult, or unusual assignments are referred to the supervisor or higher-grade employee for assistance or resolution. Completed work is reviewed for adequacy, accuracy, and conformance to established procedures.

FACTOR 3. GUIDELINES - Level 3-2 - 125 POINTS

The incumbent deals with a variety of supply regulations, policies, and procedures in accomplishing day-to-day work. The incumbent uses judgement in locating and selecting the guidelines applicable to the current situation. The guidelines may have to be adapted to specific cases. Situations requiring significant deviations from existing guidelines are referred to the supervisor or higher graded technician.

FACTOR 4. COMPLEXITY - Level 4-2 - 75 POINTS

The work involves the performance of recurring aspects of technical supply duties to secure parts. By-pass of the normal or standard supply procedures may be required to obtain critical or urgent parts. The incumbent works within the framework of established supply regulations.

policies, and procedures. The incumbent advises the supervisor of shortages and other supply problems, recommending proper action. Decisions regarding what needs to be done are based upon options related to the assignment.

FACTOR 5.  SCOPE AND EFFECT - Level 5-2 - 75 POINTS

The work involves accomplishing supply functions in accordance with established policies and procedures. The work must also conform to applicable supply regulations and rules. The work affects the accuracy and reliability of further services.

FACTOR 6.  PERSONAL CONTACTS – Level 2 and Level 2(a)
FACTOR 7.  PURPOSE OF CONTACTS - Level a - 45 POINTS

Contacts are primarily with employees within the organization. Contacts outside the organization include higher headquarters, support installations, and occasionally vendors.

The purpose of contacts is to obtain, clarify or exchange facts or information.

FACTOR 8.  PHYSICAL DEMANDS - Level 8-2 - 20 POINTS

The work requires some physical exertion such as long periods of standing; recurring bending, crouching, stooping, stretching, or reaching.

FACTOR 9.  WORK ENVIRONMENT - Level 9-2 - 20 POINTS

The work environment involves some moderate risks or discomforts which require safety precautions, such as working around moving equipment or machines.

May be required to obtain and maintain the appropriate security clearance for this position.

Duties of this position require the incumbent to obtain and to retain a valid State Commercial Drivers License to operate vehicles exceeding 26,000 pounds gross weight rating; vehicles with a towed unit with a weight rating of over 10,000 pounds; vehicles used to transport 15 or more passengers; and/or any vehicle on which placards are required per 49 CFR, Part 172, Subpart F, used to transport hazardous materials.

TOTAL POINTS = 1,035

Title and grade are established in accordance with Standards and guides referred to in Item 4. These reference materials are available for your review in the Directorate of Human Resource Management.

NOTE:  Assignment to duties other than those described above for a period in excess of 30 days constitutes a misassignment and must be corrected immediately by submission of a Standard Form 52 to detail the employee to those duties.