# Exhibit D

1          IN THE UNITED STATES DISTRICT COURT

2        FOR THE WESTERN DISTRICT OF PENNSYLVANIA

3                        - - -

4

5    EVELYN L. McKINLEY,              )
                                      )
6              Plaintiff,             )
                                      ) Civil Action
7         vs.                         ) No. 04-222E
                                      )
8    HONORABLE LES BROWNLEE,          )
     ACTING SECRETARY OF THE ARMY,    )
9                                     )
               Defendant.             )
10

11                       - - -

12         Deposition of LUIS L. GOMEZ, M.D.

13           Thursday, December 29, 2005

14                       - - -

15      The deposition of LUIS L. GOMEZ, M.D., called as
     a witness by the plaintiff, pursuant to notice and the
16   Federal Rules of Civil Procedure pertaining to the
     taking of depositions, taken before me, the
17   undersigned, Darla J. Carabotta, Notary Public in and
     for the Commonwealth of Pennsylvania, at the offices
18   of Luis L. Gomez, M.D., 509 Poplar Street, Meadville,
     Pennsylvania 16335, commencing at 10:00 o'clock a.m.,
19   the day and date above set forth.

20                       - - -

21          COMPUTER-AIDED TRANSCRIPTION BY
             MORSE, GANTVERG & HODGE, INC.
22              ERIE, PENNSYLVANIA
                   814-833-1799
23                       - - -

24

25

1  was eventually terminated."  Did Ms. McKinley tell you

2  that, or do you know where you got that?

3      A      She mentioned to me.  That's in a

4  conversation, nothing specific.

5      Q      And you say in the last full paragraph

6  there of your report that she was disabled.  And what

7  is your definition of "disabled"?

8      A      Disabled is for heavy duty work, but not

9  for light duty work.  It depends on specific.  Not

10  normal, disabled to some degree.

11      Q      But it's not like disability in the terms

12  of a paraplegic in a wheelchair?

13      A      No, disabled, partial disability.

14      Q      So right now she's -- well, when did her

15  partial disability begin, do you recall?

16      A      No.

17      Q      But obviously immediately upon injury she

18  was fully disabled in your opinion?

19      A      Yes, she was fully disabled.

20      Q      And is there any medical definition of

21  "disabled" that you relied upon, or that you are using

22  in this report?

23      A      No, it was in general, this seems to be in

24  general.

25      Q      So do you believe that she can drive a car?

1    A    Yes, she can drive a car.

2    Q    Does she walk without a cane or a

3  wheelchair in and out of your office?

4    A    Yes.

5    Q    Is she able to shower and bathe herself?

6    A    Yes.

7    Q    Can she groom herself, comb her hair, apply

8  makeup?

9    A    Yes.

10    Q    Is she able to dress herself, put on pants

11  or a dress?

12    A    Yes.

13    Q    Is she able to fix meals?

14    A    Yes.

15    Q    Is she able to shop for groceries?

16    A    Yes.

17    Q    Can she do some light household chores,

18  like cleaning and running a vacuum, perhaps?

19    A    Yes.

20    Q    Would it surprise you that she testified

21  that she was able to take care of her young

22  grandchildren?

23    A    No.

24    Q    She never --

25    A    I know she helps, but I don't know what.

1      Q     But is she disabled to the point where she

2  can't be a caretaker for young children, you know,

3  baby-sitting every now and then?

4      A     I think she can do it.

5      Q     You said that she was partially disabled,

6  meaning that she had problems walking.  Does that mean

7  just walking continually for a long period of time, or

8  what do you mean by that?

9      A     Continuously for a long period of time.

10      Q     You mentioned her back injury as being a

11  moderate problem.  I guess that's kind of in the

12  middle, not insignificant and not --

13      A     Light.

14      Q     -- too severe, correct?

15      A     Exactly.

16      Q     Have you seen back injuries that were much

17  worse than hers?

18      A     Yes, three times operations and things like

19  that.

20      Q     So she just has a mid range, a moderate

21  problem, but can you amplify a little bit more on

22  that?  What do you mean by "a moderate problem"?

23      A     Not severe, because she can do a lot of

24  things that a lot of people can't do at all because

25  they're much more severe than her.  It's not light,

1    because she can't do a lot of things she like to do.

2        Q        So essentially your testimony is she can do

3    a job as long as it doesn't require heavy lifting over

4    ten pounds?

5        A        Exactly.  Plus the other accommodations,

6    not standing for so long and standing for too many

7    hours, which we agree before.

8        Q        Okay.  Doctor, I noticed that you referred

9    to your physician notes throughout this deposition; is

10   that correct?

11       A        Yes.

12       Q        And your physician notes depict every time

13   that you saw Ms. McKinley from 1996 and to present,

14   correct?

15       A        Yes.

16       Q        And I received from your office a copy of

17   those, but I don't believe I received them in their

18   entirety.  How many pages are your physician notes

19   front side and backside?

20       A        Six both sides.  12.

21       Q        So if you don't mind, we would like to mark

22   those as the next exhibit, Deposition Exhibit 11, and

23   enter them in the record since you referred to them.

24   Do you have a copy machine here?

25       A        Yes, they have it out there.