```
                   IN THE UNITED STATES DISTRICT COURT
                 FOR THE WESTERN DISTRICT OF PENNSYLVANIA


EVELYN McKINLEY,                    )
                                    )    Civil Action No. 04-222E
          Plaintiff,                )
                                    )    Chief Magistrate Judge
                                    )    Susan Paradise Baxter
          v.                        )
                                    )    Judge Sean McLaughlin
R. L. BROWNLEE, Acting              )
Secretary of the Army,              )    ELECTRONICALLY FILED
                                    )
          Defendant.                )
```

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION
TO MOTION FOR SUMMARY JUDGMENT**

**I. PLAINTIFF NARROWS HER ALLEGED COMPARABLES TO ONE INDIVIDUAL, DONALD WHETZEL, AND EVIDENCE CLEARLY DEMONSTRATES THAT HE IS NOT SIMILARLY SITUATED.**

At her deposition, Plaintiff identified six males that were allegedly "similarly situated" and treated more favorably.  Ex. A (Def.'s Appendix of Exhibits) at 89-91.  However, in her Opposition Brief, Plaintiff has apparently abandoned argument regarding five of these males and now only contests that Donald Whetzel was similarly situated.  Pl.'s Opposition at 4-7.

Plaintiff essentially claims that Mr. Whetzel is similarly situated because he was a Heavy Mobile Equipment Repairer ("HMER") in 1994, suffered an injury in 1994, and was provided two job positions with the Army in 1996 and 2000.  These facts alone hardly make Mr. Whetzel a similarly situated employee. Comparables must be similarly situated in virtually all relevant and material respects.  See Clayton v. Meijer, 281 F.3d 605, 611

(6th Cir. 2002); <u>Graham v. Long Island R.R.</u>, 230 F.3d 34, 40 (2d Cir. 2000); <u>Conward v. Cambridge Sch. Comm.</u>, 171 F.3d 12, 20 (1st Cir. 1999); <u>Cf. Monaco v. American General Assurance Co.</u>, 359 F.3d 296, 305 (3d Cir. 2004)(addressing "similarly situated" in a case brought under the New Jersey Law Against Discrimination). In a similarly situated analysis, factors that may be considered are whether the comparables have the same supervisor, are subject to the same standards, work the same tour, and have comparable work experience. <u>Patterson v. Avery Dennison Corp.</u>, 281 F.3d 676, 680 (7th Cir. 2002); <u>Woods v. Milner</u>, 760 F. Supp. 623, 645 (E.D. Mich. 1991). This analysis "triggers a fact-intensive inquiry based on a whole constellation of factors facing [the] individual employee." <u>Monaco</u>, 359 F.3d at 306. Moreover, the comparables must be "similarly situated from the perspective of their employer <u>at the time of the relevant employment decisions</u>." <u>Perez v. Texas Dept. of Criminal Justice</u>, 395 F.3d 206, 210 (5th Cir. 2004)(emphasis added).

In Plaintiff's case, the relevant employment decision terminating her position with the Army occurred by a letter signed on January 6, 2004. Def.'s Ex. B at 46. During this time, and at no time prior to this event, was Mr. Whetzel ever similarly situated to Plaintiff. In fact, aside from working as an HMER until 1994 and his injury that same year, Mr. Whetzel has very few commonalities with Plaintiff. He worked an entirely

2

different job (i.e., Material Handler and Supply Technician from 1996 to present); he was managed by a different supervisor; he worked in an entirely different section and building; and he received higher pay.  See Def.'s Summary Judgment Brief at 7; see also Def.'s Ex. B at 49 (ECS 103 Organization Chart showing Mr. Whetzel in a different work section with a different immediate supervisor).  Mr. Whetzel also had much more experience with the Army having begun employment in 1972.  Def.'s Additional Ex. H at 154 (Whetzel testimony provided on Dec. 3, 2003).[1]

Moreover, the managers during the relevant decision-making periods were different.  When Plaintiff was officially terminated in 2004, Arnie Fairbanks was the manager of ECS 103.  Def.'s Additional Ex. I (Fairbanks Deposition) at 8-9, 26 (assuming manager position in November 2002); Def.'s Ex. B at 40-42 (Notice of Proposed Removal signed by Mr. Fairbanks).  However, when Mr. Whetzel received a job offer in 1996, the offer was for a position at the New Castle, Pennsylvania, facility where Al Morrell was the manager.  Def.'s Additional Ex. H at 155.  For Mr. Whetzel's second job offer in 2000, it was for a position at the Conneaut Lake/Geneva facility where Al Morrell was still the manager.  Def.'s Additional Ex. J (Sharky Affidavit) at ¶ 6.

---

[1] Defendant has submitted an Additional Appendix of Exhibits to rebut the allegations in Plaintiff's Opposition.  These additional exhibits begin with the letter H in order to correspond with the previously filed Defendant's Appendix of Exhibits (A-G).

Thus, consideration of all the material factors, especially at the time of Plaintiff's termination, clearly demonstrates many distinctions between the two employees. Plaintiff simply cannot succeed at the prima facie stage of this case by merely pointing to Mr. Whetzel's position as an HMER in 1994 and the subsequent job openings in 1996 and 2000.[2]

## II. BECAUSE PLAINTIFF WAS NOT A MEMBER OF THE MILITARY RESERVES, SHE FAILS TO QUALIFY FOR ANY OF THE OPEN POSITIONS SHE IDENTIFIES.

Plaintiff identifies a number of vacant positions at ECS 103 that she was allegedly qualified to perform. Pl.'s Opposition at 19-21; Pl.'s Ex. 11. Assuming she is considered "disabled" and assuming she made a valid request for accommodation during the time periods when these positions were available (contentions we do not admit), Plaintiff still could not have qualified for these positions because they all required membership in the military reserve.

The Third Circuit established that the burden is on the employee to show "that there were vacant, funded positions whose

---

[2] Plaintiff's argument that Mr. Whetzel's position was specifically "created" for him is also without merit. This assertion is not based upon any reliable evidence in the record. Mr. Whetzel testified that he could not remember whether these positions were posted or whether he was required to fill out applications. Def.'s Additional Ex. K (Whetzel Deposition July 20, 2005) at 12-13, 15-16, 41. From this response, Plaintiff inappropriately makes the unsupported conclusion that Mr. Whetzel's positions must have been "created." Pl.'s SOAMF at ¶ 4, 5.

essential duties he was capable of performing, with or without reasonable accommodation, and that these positions were at an equivalent level or position as [plaintiff's current position]." Shiring v. Runyon, 90 F.3d 827, 832 (3d Cir. 1996); see also Williams v. Philadelphia Housing Auth. Police Dept., 380 F.3d 751, 768 (3d Cir. 2004)(a qualified individual is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.")(quoting 42 U.S.C. § 12111(8))(emphasis added).

Attached to Defendant's Summary Judgment Motion was an affidavit from Mr. Sharky stating that during the relevant time period, March 16, 2003 through February 7, 2004, all openings at ECS 103 were available through the Military Technician Program ("MT Program"), which requires the applicant to have military reserve affiliation. Def.'s Ex. E at ¶ 4. In order to respond to the additional positions Plaintiff has now identified, Defendant has submitted another affidavit from Mr. Sharky, and the response is still the same - all of the positions identified by Plaintiff are MT Program positions requiring reserve affiliation. Def.'s Additional Ex. J at ¶ 4. In fact, each of the eventual hirees for these positions maintained membership in the Army Reserves. Id. Plaintiff simply could not qualify for one of these positions because she was discharged from the Army Reserves in 1997 and cannot demonstrate the required reserve

affiliation.  See Def.'s Ex. A at 10, 30, 37; Ex. B at 5; see also Pl.'s Response to Def.'s Statement of Facts at 6 (admitting that she was discharged from the reserves on March 18, 1997). Nowhere in Plaintiff's Opposition does she contest or offer any argument to rebut this reserve affiliation requirement.

Accordingly, to survive summary judgment, the non-moving party must actually come forward with "affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  Plaintiff has no evidence of any open and funded position for which she was qualified to fill and simply cannot succeed on this issue.[3]

### III. PLAINTIFF'S ACCUSATION THAT DEFENDANT FAILED TO ENGAGE IN THE INTERACTIVE PROCESS IS WITHOUT MERIT AND WAS RAISED MERELY TO DISTRACT THE COURT.

Plaintiff also blames Defendant for somehow failing to engage in an "interactive process" to assist her in obtaining an open position.  Pl.'s Opposition at 17.  Plaintiff further alleges that Defendant breached his duty to communicate in good faith regarding available positions.  Id. at 21-22.  These allegations are without merit.

---

[3] See also Def.'s Br. at 28, n.4 (arguing that even if Plaintiff somehow circumvented the reserve affiliation requirement, she would still be unable to perform the requested positions given her very limiting medical restrictions).

6

As an initial matter, given that Plaintiff was never disabled, this claim is moot. Furthermore, assuming *arguendo* that Plaintiff was disabled, this claim is still moot. The Third Circuit has held,

> in a failure to transfer case, if, after a full opportunity for discovery, the summary judgment record is insufficient to establish the existence of an appropriate position into which the plaintiff could have transferred, summary judgment must be granted in favor of the defendant - - even if it also appears that the defendant failed to engage in good faith in the interactive process.

Donahue v. Consolidated Rail Corp., 224 F.3d 226, 234 (3d Cir. 2000); See also Willis v. Conopco, Inc., 108 F.3d 282, 285 (11th Cir. 1997) (holding that "where a plaintiff cannot demonstrate 'reasonable accommodation' the employer's lack of investigation into reasonable accommodation is unimportant.") (citation omitted). As demonstrated above, Plaintiff cannot identify any reasonable accommodation for her alleged ailment because her lack of reserve affiliation disqualifies her from any of the open positions at ECS 103.

Moreover, Defendant hardly proceeded in bad faith, nor was there a failure to communicate. When Plaintiff was injured, Defendant provided her a light-duty position that Plaintiff worked for almost six months. Def.'s Ex. A at 61; Def.'s Ex. B at 18-19. When it became apparent that Plaintiff might not return to her original HMER position, Defendant communicated with

Plaintiff on two occasions in an effort to determine her medical status and fitness for duty.  Def.'s Ex. B at 36-39.

Accordingly, Plaintiff's claim that Defendant did not engage in the interactive process is a non-issue and nothing more than an attempt to distract the Court from recognizing that Plaintiff has not produced any affirmative evidence to survive summary judgment.

                              Respectfully submitted,

                              MARY BETH BUCHANAN
                              United States Attorney

| Of Counsel: | s/Paul D. Kovac |
|---|---|
| Major Kwasi Hawks | PAUL D. KOVAC |
| U.S. Army | Assistant U.S. Attorney |
| Litigation Attorney | 700 Grant Street, Suite 4000 |
|  | Pittsburgh, PA 15219 |
|  | (412) 894-7489 |
|  |  |
|  | Counsel for Defendant |

Dated:  May 1, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on May 1, 2006, I electronically filed and/or served by first-class U.S. mail a copy of Defendant's Reply to Plaintiff's Opposition to Motion for Summary Judgment upon the following:

>Neal A. Sanders, Esquire
>Counsel for Plaintiff
>Law Office of Neal Alan Sanders
>1924 North Main Street Extension
>Butler, PA 16001

>s/Paul D. Kovac
>PAUL D. KOVAC
>Assistant U.S. Attorney