**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EVELYN L. MCKINLEY, | ) | |
| Plaintiff | ) | C.A. No.  04-222 Erie |
| | ) | |
| v. | ) | District Judge McLaughlin |
| | ) | Magistrate Judge Baxter |
| HONORABLE LES BROWNLEE, | ) | |
| Acting Secretary of the Army, | ) | |
| Defendant. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.      RECOMMENDATION**

It is respectfully recommended that Defendant's motion for summary judgment [Document # 28] be granted.

**II.     REPORT**

**A.      Relevant Procedural History**

Plaintiff brings this action against Defendant R. L. Brownlee, acting Secretary of the United States Army, pursuant to Title VII, 42 U.S.C. § 2000e, et seq., and the Rehabilitation Act, 29 U.S.C. § 701, et seq.  Specifically, Plaintiff has brought claims of gender and disability discrimination based upon alleged mistreatment and ultimate termination from her position as a Heavy Mobile Equipment Repairer ("HMER") at the Army's Equipment Concentration Site ("ECS") in Conneaut Lake/Geneva, Pennsylvania.  As relief for her claims, Plaintiff seeks to recover lost wages, lost benefits, compensatory damages and attorney's fees.

Defendant has filed a motion for summary judgment, contending that Plaintiff cannot establish a *prima facie* case of either gender or disability discrimination.  In particular, Defendant argues that:  (i) Plaintiff has failed to demonstrate that there are any "similarly situated" males who received more favorable treatment than she did, which is required to establish a *prima facie* case of gender discrimination; and (ii) Plaintiff has failed to demonstrate that she suffers from a "disability" under the Rehabilitation Act, which is required to set forth a

*prima facie* case of disability discrimination.  Alternatively, Defendant contends that, even if

Plaintiff could establish a *prima facie* case of discrimination, either on the basis of gender or

disability, she is unable to refute Defendant's legitimate, non-discriminatory reason for the

Army's decision to terminate her employment.

Plaintiff has filed a brief in response to Defendant's motion, claiming that she has, in

fact, set forth a *prima facie* case of both gender and disability discrimination, and that she has

produced sufficient record evidence to establish a genuine issue of material fact as to whether

Defendant's articulated reason for her dismissal was a pretext for discrimination.  Defendant has

filed a reply brief refuting the arguments raised in Plaintiff's response.  This matter is now ripe

for consideration by this Court.


## B.     Relevant Factual History[1]

Plaintiff is a female who began civilian employment in 1989 with the Army Reserve

Command, 99th Regional Support Command, ECS No. 103, Conneaut Lake, Pennsylvania.

(Document # 30, ¶ 1).  Plaintiff was initially hired as a mobile equipment servicer and was later

promoted to HMER. (Document # 30, ¶ 3).  On April 2, 2001, Plaintiff injured her back while

lifting truck batteries at work. (Document # 30, ¶ 9).  Plaintiff's injury was diagnosed as a

lumbar strain, and an MRI revealed a large central disk herniation and degeneration at L4-5.

(Document # 30, ¶ 10; Document # 36, ¶ 10).

On October 19, 2001, David A. Vermeire, M.D., a Board-certified orthopedic surgeon,

opined that Plaintiff was capable of returning to employment in a "sedentary work capacity"

---

[1]

In conjunction with his motion for summary judgment, Defendant has filed a "Statement of Undisputed Material
Facts," in which Defendant lists 65 fact statements claimed to be undisputed.  [Document # 30].  Plaintiff filed a
response admitting the majority of Defendant's fact statements, with some qualifications that this Court finds to be
adequately supported by the record. [Document # 36].  As a result, the parties' undisputed fact statements, as well
as Plaintiff's qualifications, where appropriate, are reflected in the factual history recounted herein.  The Court
notes that Plaintiff has also filed a document entitled  "Statement of Additional Material Facts," setting forth 20
additional fact statements, most of which have been disputed by Defendant and are, thus, excluded from the factual
recitation set forth herein. [Document ## 37 and 41].

with the following restrictions:  no lifting over 10 pounds; no pushing, pulling, squatting,

kneeling, or climbing; and limited sitting, walking, standing, and twisting. (Document # 30,

¶ 11).  On November 6, 2001, Brian E. Dalton, M.D., Plaintiff's neurosurgeon, concurred with

Dr. Vermeire's opinion and authorized Plaintiff's release to sedentary work. (Document # 30,

¶¶ 12, 13).  On November 9, 2001, the Army notified Plaintiff that a light-duty position within

her work restrictions was available starting November 19, 2001. (Document # 30, ¶ 14).

Plaintiff accepted the position and returned to work on November 19, 2001. (Document # 30,

¶ 15).

In her light-duty position, Plaintiff was initially required, among other things, to answer

a telephone located on the wall above her desk, and to revise various work manuals. (Document

# 30, ¶ 17).  Plaintiff complained that the telephone-answering duties and the lifting of manuals

exceeded her work restrictions. (Document # 30, ¶ 18).  Robin Green, a vocational rehabilitation

nurse assigned by the Labor Department to assist injured workers, approached Army

management with Plaintiff's complaints. (Document # 30, ¶ 19).  Nurse Green testified that

Army management was cooperative and resolved Plaintiff's complaints by eliminating the

phone task and requiring other employees to assist Plaintiff in moving any manuals that

exceeded 10 pounds. (Document # 30, ¶ 20).  The light-duty position, with the telephone and

manual modifications, was subsequently approved by Dr. Dalton. (Document # 30, ¶ 21).

Plaintiff worked in the light-duty position from November 19, 2001, until May 13, 2002,

when she stopped working due to back pain. (Document # 30, ¶ 25).  Plaintiff went to the

Franklin Medical Center Emergency Room on May 13, 2002, for examination and treatment of

her back pain, and was referred to William C. Welch, M.D., a neurosurgeon at the University of

Pittsburgh Medical Center. (Document # 36, ¶ 25).

On or about July 16, 2002, the Army sent Plaintiff a memorandum indicating that her

light-duty position was temporary and was provided with the full intent that Plaintiff would

return to her original HMER duties.  The memorandum further informed Plaintiff that the Army

3

was not able to permanently assign her to a light-duty position. (Document # 30, ¶ 44).  As a result, the memorandum instructed Plaintiff to provide medical documents from a physician within 30 days in order for the Army to determine Plaintiff's status and her capability of performing the full range of duties of her original HMER position. (Document # 30, ¶ 43).

On July 31, 2002, Dr. Welch wrote a letter to Nurse Green informing her that Plaintiff "could consider surgery," but that a positive response from surgery was uncertain. (Document # 30, ¶ 28).  On August 15, 2002, Plaintiff elected to have surgery. (Document # 30, Exhibit B at p. 29).  On September 16, 2002, Dr. Welch performed an anterior L4-5 interbody fusion surgery on Plaintiff's lower back. (Document # 30, ¶ 29).

On February 24, 2003, the Army sent Plaintiff a follow-up memorandum asking for further medical documents from a physician within 15 days in order for the Army to determine Plaintiff's status and her capability of performing the full range of duties of her original HMER position.  The memorandum also reiterated that a permanent light-duty job was not available. (Document # 30, ¶ 45).

Dr. Welch opined that Plaintiff was totally disabled from the date of her surgery, September 16, 2002, to March 16, 2003, at which time he cleared her to return to part-time, light-duty work, with a lifting restriction of 10 pounds and the ability to change positions for comfort. (Document # 30, ¶¶ 32, 33).  On May 6, 2003, ECS Manager Arnold Fairbanks issued Plaintiff a "Notice of Proposed Removal" indicating that he was proposing to remove Plaintiff from employment based upon her inability to perform the HMER position. (Document # 30, ¶ 48).  At her deposition, Plaintiff acknowledged that she could not perform her HMER job duties without significant accommodations, including:  no lifting over 10 pounds; no pushing, pulling, squatting, kneeling, or climbing; and limited sitting, walking, standing, and twisting. (Document # 30, ¶ 47).  The May 6, 2003 notice also indicated that there were no vacant positions available that Plaintiff could perform within her medical restrictions. (Document # 30, ¶ 49).

4

On January 6, 2004, the Army notified Plaintiff that the charge of inability to perform the HMER position was supported by the preponderance of evidence and that her removal would be effective February 7, 2004. (Document # 30, ¶ 50). The January 6, 2004 termination letter also indicated that there were no other vacant positions available that Plaintiff could perform within her medical restrictions. (Document # 30, ¶ 51).

### C.    Standard of Review

Federal Rule of Civil Procedure 56(c)  provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990), quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-

5

movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will effect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.

### D.      Discussion

#### 1.      Gender Discrimination Claim

In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the Supreme Court established a burden-shifting analysis to be used by courts in evaluating evidence in Title VII discrimination cases. Under this analysis, Plaintiff must first establish a *prima facie* case, which is considered sufficient to create a presumption of discrimination. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000); Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000). Once a prima facie case is established, the employer must then articulate a legitimate, non-discriminatory reason for the adverse employment action it took against the plaintiff. Shaner, 204 F.3d at 500. The employer need not persuade the court that it was actually motivated by the proffered reasons, but needs only to raise a factual issue as to whether it

6

discriminated against the plaintiff.  This burden is satisfied if the employer "simply 'explains what [it] has done' or 'produc[es] evidence of legitimate nondiscriminatory reasons.'"  Board of Trustees of Keene State College v. Sweeney, 439 U.S. 24, 25, n.2 (1978).  Thus, "the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus."  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 257 (1981).

Once the employer has met its relatively light burden of articulating a legitimate reason for the adverse employment decision, the burden shifts back to the plaintiff to show by a preponderance of the evidence that the employer's proffered explanation is pretextual.  Id. Plaintiff may meet this burden either directly, by persuading the court that the employer's action was more likely motivated by a discriminatory reason, or indirectly, by showing that the employer's proffered explanation is unworthy of credence.  See McDonnell Douglas, 411 U.S. at 804-805.

Throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff.  See Burdine, 450 U.S. at 253-256.  Plaintiff may meet this burden if her "prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148.

### a.    *Prima Facie* Case

In order to establish a *prime facie* case of gender discrimination under Title VII, the Plaintiff must prove that:

> (i)    she belongs to a protected class;
>
> (ii)    she was qualified for the position at issue;
>
> (iii)    she was subjected to an adverse employment action; and
>
> (iv)    nonmembers of a protected class were treated more favorably or the circumstances give rise to an inference of unlawful discrimination.

Pivirotto v. Innovative Systems, Inc., 191 F.3d 344, 352 (3d Cir. 1999).

In this case, Defendant argues that Plaintiff cannot meet her initial burden of proving a *prima facie* case of gender discrimination because she cannot satisfy the fourth element.[2] Specifically, Defendant contends that Plaintiff has failed to identify any "similarly situated" males who were treated more favorably, and is unable to prove that the circumstances of this case raise an inference of unlawful gender discrimination.

In her response to Defendant's motion, Plaintiff has identified one male employee whom she argues was similarly situated to her, yet received more favorable treatment from Defendant - Don Whetzel ("Whetzel"). (Document # 35, Plaintiff's Opposition Brief, at pp. 4-7). Whetzel was employed by Defendant as an HMER in New Castle, Pennsylvania, from 1972 through November 1994, when he was seriously injured in an automobile accident that caused him to be disabled from returning to work for approximately one and a half years. (Document # 40, Exhibit H at p. 3 (internal p. 154); Document # 38, Exhibit 9 at p. 3 (internal p. 10)). Whetzel returned to work in or around February 1996 as a Maintenance Administrative Clerk at Defendant's New Castle, Pennsylvania, facility, where he was supervised by Al Morrell ("Morrell"). (Document # 40, Exhibit H at p. 3 (internal p. 155); Document # 38, Exhibit H, internal exhibit 1). In early 2000, Morrell contacted Whetzel and offered him a position as a Supply Technician at Defendant's Geneva facility, where Plaintiff was stationed.[3] (Document # 38, Exhibit 9 at p. 14). Whetzel accepted the offer and took over the position of Supply Technician at the Geneva facility, where he worked in a building separate from Plaintiff and the other HMER's, and was supervised by Perry Wood ("Wood"). (Document # 31, Exhibit G at p.

---

[2]

Defendant has apparently conceded the first three elements of Plaintiff's *prima facie* case and, therefore, this Court will presume that they have been satisfied for purposes of determining Defendant's motion.

[3]

Morrell had previously moved from Defendant's New Castle facility to manage its Geneva facility. (Document # 38, Exhibit 9 at pp. 14-15).

4 (internal p. 40); Document # 38, Exhibit 2 at p. 36 (internal p. 96); Document # 38, Exhibit 9 at pp. 11-12 (internal pp. 20-21)).  As of the date of his deposition in this case on July 20, 2005, Whetzel was still employed as a Supply Technician at Defendant's Geneva facility under Wood's supervision. (Document # 31, Exhibit G at p. 4 (internal p. 40)).

     Plaintiff argues that "Whetzel, like Plaintiff, was a HMER.  Like Plaintiff, he was involved in an accident that rendered him permanently unable to perform the duties of the HMER position.  Unlike Plaintiff, however, Mr. Whetzel had a position created for him which he stayed in for four years before being given another position on a permanent basis.  Thus, Mr. Whetzel was similarly situated and was treated more favorably." (Document # 35 at p. 7).  This somewhat simplistic argument, however, misses the mark.

     First of all, Plaintiff's contention that Whetzel was treated more favorably than she because Defendant "created" a position to which he could return after his accident is without merit.  Even if Plaintiff could prove that Whetzel's position as a Maintenance Administrative Clerk was specially created for him in 1996, a fact that is not conclusively established by the record evidence in this case, it is apparent that Plaintiff's light duty HMER position to which she returned after her work accident was also specially created for her. (See Defendant's November 9, 2001 letter offering Plaintiff light duty position, which is attached as Exhibit 12 to Document # 38, and states "[y]our [HMER] position has been modified to accommodate your return to duty with limited duties and physical limitations...").  Thus, Whetzel did not receive any more favorable treatment than Plaintiff in this regard.

     Secondly, "[i]n order to determine who might qualify as a similarly situated employee we must look to the job function, level of supervisory responsibility and salary, as well as other factors relevant to the particular workplace."  Monaco v. American General Assurance Co., 359 F.3d 296, 305 (3d Cir. 2004).  "[T]he plaintiff must show that the 'comparables' are similarly situated in all respects.... thus, to be deemed 'similarly situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been

9

subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)(emphasis in original); Steward v. Sears, Roebuck & Co., 2006 W.L. 1648979 at * 15 (E.D.Pa. Jun. 13, 2006), citing Bullock v. Children's Hosp. of Philadelphia, 71 F.Supp.2d 482, 489 (E.D.Pa. 1999).  Another relevant factor is whether the plaintiff and proffered "comparable" held the same or equivalent positions at the time of the challenged employment decision.  See, e.g., Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002)(holding that plaintiff failed to show coworker was similarly situated where coworker "held an entirely different position in another division of the company"); Hoffman Dombrowski v. Arlington Int'l Racecourse, Inc., 254 F.3d 644, 651 (7th Cir. 2001)(deciding comparator was not similarly situated to plaintiff because they did not hold the same or equivalent positions at the time of the challenged employment decision).

The record evidence is clear that, at the time Plaintiff was removed from her position as HMER, Whetzel was employed in a different position (Supply Technician), worked in a building separate from Plaintiff, was managed by a different supervisor,[4] and received a higher salary.  Furthermore, the allegedly favorable treatment received by Whetzel, i.e., the offer of a permanent position as Supply Technician in 2000, was bestowed by Morrell, while the decision to remove Plaintiff from her position as HMER was made by the ECS Manager, Arnie Fairbanks, and Defendant's Civilian Personnel Advisory Center at Fort McCoy, Wisconsin. (Document # 38, Exhibit 9 at p. 14; Document # 31, Exhibit B at pp. 40-42; Document # 38, Exhibit 3 at pp. 80-81).  This latter point has particular significance because "[d]ifferent employment decisions, concerning different employees, made by different supervisors ... sufficiently account for any disparity in treatment, thereby preventing an inference of discrimination." Snipes v. Ill. Dep't. of Corr., 291 F.2d 460, 463 (7th Cir. 2002); see also Radue

---

[4]

Whetzel was supervised by Perry Wood, while Plaintiff's immediate supervisor was Larry Flynn, who reported directly to Jimmie Keener. (Document # 30, ¶¶ 59, 60; Document # 31, Exhibit B at p. 49).

v. Kimberly Clark Corp., 219 F.3d 612, 618 (7th Cir. 2000)(explaining that when "different decision-makers are involved, two decisions are rarely similarly situated in all respects).

Based on the foregoing, Plaintiff has failed to identify a male employee who was similarly situated to her and received more favorable treatment. Moreover, Plaintiff has failed to allege any other circumstances that give rise to an inference of gender discrimination. As a result, Plaintiff is unable to satisfy the fourth element of a *prima facie* case of gender discrimination, and such claim should be dismissed.

### b.    Pretext

Even if Plaintiff could set forth a *prima facie* case, she is unable to meet her burden of proving by a preponderance of evidence that Defendant's proffered reason for removing her from her position as HMER was actually a pretext for gender discrimination. Burdine, 450 U.S. at 257.

A plaintiff "may defeat a motion for summary judgment by pointing 'to some evidence, direct or circumstantial, from which a factfinder would reasonably either: (1) disbelieve the [Defendant's] articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the [Defendant's] action.'" Jones v. School District of Phila., 198 F.3d 403, 413 (3d Cir. 1999), quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

In this case, Defendant's articulated reasons for its decision to remove Plaintiff from her position were: (i) her "prolonged absence [from the worksite] with no definite expectation" of return to full-time duty; and (ii) her inability to physically perform the duties of her position. (Document # 31, Exhibit B at pp. 40-46).

To discredit a legitimate reason proffered by an employer, the plaintiff must present evidence demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable

11

factfinder could rationally find them 'unworthy of credence.'" <u>Fuentes</u>, 32 F.3d at 765 (citation omitted); <u>Fucci v. Graduate Hospital</u>, 969 F.Supp. 310, 316 (E.D.Pa. 1997). This she cannot do. Indeed, Plaintiff admitted that she could not perform the HMER position without any accommodations, and the accommodations she would need were so restrictive that the essential functions of the position would have had to have been eliminated. (Document # 31, Exhibit A at pp. 21-22, 43; Document # 30 at ¶ 47).

The only evidence offered by Plaintiff that may be construed as evidence of pretext is her testimony that four males were hired by Defendant to fill four Supply Technician jobs that allegedly became available after Plaintiff was released to light-duty work on March 16, 2003. (Document # 31, Exhibit A at p. 35 (internal p. 91)). Plaintiff claims that she was qualified to perform these jobs, yet was never notified of their availability by Defendant. However, Plaintiff also testified that two other Supply Technician jobs became available during this same time period, for which Defendant hired females. (Document # 38, Exhibit 2 at p. 30 (internal p. 82)). Thus, taken as a whole, Plaintiff has failed to point to evidence "from which a factfinder would reasonably either: (1) disbelieve the [Defendant's] articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the [Defendant's] action." <u>Fuentes</u>, 32 F.3d at 764.

### 2.    Disability Discrimination Claim

Plaintiff also alleges that Defendant discriminated against her based upon her alleged disability, in violation of the Rehabilitation Act of 1973, 29, U.S.C. § 701 <u>et</u> <u>seq.</u> The Rehabilitation Act prohibits federal agencies from discriminating against disabled employees in matters of hiring, placement, or advancement. <u>Mengine v. Runyon</u>, 114 F.3d 415, 418 (3d Cir. 1997). The burden-shifting analysis developed for Title VII discrimination cases applies equally

to claims brought under the Rehabilitation Act and the ADA.[5]  See Shiring v. Runyon, 90 F.3d 827 (3d Cir. 1996); McDonald v. Commonwealth of Pa., 62 F.3d 92, 94 (3d Cir. 1995); Armbruster v. UNISYS Corp., 32 F.3d 768, 777 (3d Cir. 1994).  Thus, Plaintiff must first establish a *prima facie* case of disability discrimination.

### a.    *Prima Facie* Case

A *prima facie* case of discrimination in violation of the Rehabilitation Act or the ADA requires a plaintiff to establish that:  (i) she is "disabled" as defined by the ADA; (ii) she is qualified to perform the essential functions of the job, with or without reasonable accommodation; and (iii) she has suffered an adverse employment decision as a result of discrimination.  Shiring, 90 F.3d at 831; Gaul v. Lucent Technologies, Inc., 134 F.3d 576, 580.

### i.    "Disability"

The ADA defines disability as "a) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; b) a record of such an impairment; or c) being regarded *as* having such impairment." 42 U.S.C. § 12102(2); see also 29 U.S.C. § 705(9)(B)(Rehabilitation Act definition of disability).  Defendant argues that Plaintiff is unable to prove that she is "disabled" under the Act and, thus, has failed to set forth a *prima facie* case.  Plaintiff, on the other hand, contends that she meets the first prong of the definition of "disability."  To meet this first prong, Plaintiff must prove that she has  (i) a physical or mental *impairment* (ii) that *substantially limits* (iii) a *major life activity.*  See Gaul, 134 F.3d at 580.  Each of these highlighted terms is defined in regulations issued by the EEOC.

The regulations define an "impairment" as:

---

[5]

The substantive standards for determining liability are the same under the Rehabilitation Act and the Americans with Disabilities Act ("ADA"), which prohibits disability discrimination in the private sector.  McDonald v. Commonwealth of Pa., 62 F.3d 92, 95 (3d Cir. 1995).

1)  any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitor-urinary, hemic and lymphatic, skin, and endocrine; or

2)  any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

29 C.F.R. § 1630.2(h)(1), (2).

There is no dispute that Plaintiff has an impairment, specifically herniation and degeneration of the L4-5 disks in her lower back, which ultimately required interbody fusion surgery on September 16, 2002. (Document # 30, ¶¶ 10, 29; Document # 36, ¶ 10). Nonetheless, Defendant disputes that Plaintiff's impairment substantially limits a major life activity, such that she can be considered "disabled" under the Act.

"Major life activities" are defined in the regulations as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). The Appendix to part 1630 expands on this definition by stating, "[t]his list is not exhaustive. For example, other major life activities include, but are not limited to, sitting, standing, lifting, reaching." 29 C.F.R. Pt. 1630, App.

Major life activities are "substantially limited" when one is:

1)  unable to perform a major life activity that the average person in the general population can perform; or

2)  significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(2).

The Supreme Court has held that the foregoing terms must be "interpreted strictly to create a demanding standard for qualifying as disabled." Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 197 (2002). See also Marinellli v. City of Erie, Pa., 216 F.3d 354, 362 (3d Cir. 2000)("we have held only extremely limiting disabilities - in either the short or long term - to qualify for protected status under the ADA").

14

In this case, Plaintiff claims that she is substantially limited in the major life activities of performing manual tasks and working.  (Document # 35 at pp. 13-16).  Thus, Plaintiff's ability to perform each of these activities will be addressed in turn.

### a.        Manual Tasks

"[T]o be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives ... [H]ousehold chores, bathing, and brushing one's teeth are among the types of manual tasks of central importance to people's daily lives, and should [be] part of the assessment of whether [a plaintiff is] substantially limited in performing manual tasks." Toyota Motor, 534 U.S. at 195-96.

Here, Defendant points to the following excerpt from Plaintiff's deposition testimony in support of its assertion that Plaintiff "is fully capable of performing most major life activities" (Document # 29 at pp. 13-14):

Q:    So you were able to, for instance, drive yourself to work?

A:    Yes.

Q:    And what about normal daily activities, were you able to feed yourself?

A:    Yes.

Q:    And did you go to the grocery store and shop for food occasionally?

A:    I went to the grocery.  I didn't buy a lot of groceries, but yes.

Q:    Were you able to walk without the assistance of a cane - -

A:    Yes.

Q:    - - or a wheelchair?  Is that a yes?

A:    Yes.

Q:    Did you have a cane at all during this time?

A:    No.

15

Q:      Did you wear a back brace during this time?

A:      No.

Q:      I'm speaking, you know, when you were cleared, on March 16, 2003. Did you have a house cleaner at that time?

A:      Tom (Plaintiff's husband) and I both did the housework together.

Q:      And that housework would include the picking up of clothes and normal household chores, is that correct?

A:      Yes.  There's not much when there's only two people.

            *                 *                 *

Q:      Were you able to shower?

A:      Yes.

Q:      Were you able to prepare some meals?

A:      Yes.

Q:      Did you ever use the vacuum?

A:      It's limited.

Q:      But, at least, during this time, you were able to do it in a limited capacity?

A:      Yes.

(Document # 29, Exhibit A at pp. 70-72).

Defendant also indicates that Plaintiff was physically capable of babysitting her five grandchildren, ages 7, 5, 3, 2, and 9 months, by herself and for lengthy periods of time, in some cases as long as eight hours. (Document # 29, Exhibit A at p. 78).  Plaintiff testified that her care-taking duties included helping the children go to the bathroom and washing themselves, playing with them, and other general duties associated with taking care of young children. (Id.).

Moreover, Defendant argues that, during his deposition, Plaintiff's treating physician, Dr. Gomez, confirmed that Plaintiff is fully capable of performing the manual tasks Plaintiff testified she is capable of performing:

Q:      So do you believe that she can drive a car?

16

A:      Yes, she can drive a car.

Q:      Does she walk without a cane or a wheelchair in and out of your office?

A:      Yes.

Q:      Is she able to shower and bathe herself?

A:      Yes.

Q:      Is she able to dress herself, put on pants or a dress?

A:      Yes.

Q:      Is she able to fix meals?

A:      Yes.

Q:      Is she able to shop for groceries?

A:      Yes.

Q:      Can she do some light household chores, like cleaning and running a vacuum, perhaps?

A:      Yes.

Q:      Would it surprise you that she testified that she was able to take care of her young grandchildren?

A:      No.

Q:      She never - -

A:      I know she helps, but I don't know what.

Q:      But is she disabled to the point where she can't be a caretaker for young children, you know, babysitting every now and then?

A:      I think she can do it.

(Document # 29, Exhibit D at pp. 62-64).

Plaintiff attempts to counter the above testimony by arguing that "she [is] unable to do yard work such that someone ha[s] to be hired to do it, ... that she does laundry more frequently with lighter loads because of the weight, that she now sorts laundry on a table so she doesn't have to bend over, that she is unable to dust or vacuum regularly, and that she doesn't let the garbage fill up because of the weight." (Document # 35 at pp. 13-14). Plaintiff also points out

17

that "Dr. Gomez noted that Plaintiff was unable to safely lift more than ten pounds and that this limitation would certainly impact on her ability to go grocery shopping or perform household chores." (Document # 35 at p. 14; Document # 37 at ¶ 13). However, the Third Circuit has held that a lifting restriction of ten pounds "does not render [one] sufficiently different from the general population such that [she] is substantially limited in [her] ability to lift." Marinelli, 216 F.3d at 364. Thus, Plaintiff's contention that she is substantially limited in performing the manual tasks of picking up trash, grocery shopping, and doing laundry "because of the weight" is without merit. Furthermore, Plaintiff's asserted limitations on performing yard work, dusting and vacuuming are equally inapposite in determining whether she is substantially limited from performing a major life activity. See, e.g., Weber v. Strippit, Inc., 186 F.3d 907, 914 (8th Cir. 1999), cert. denied, 528 U.S. 1078 (2000)(holding that shoveling snow, gardening, and mowing the lawn are not major life activities); Marinelli, 216 F.3d at 363 (holding that inability to perform household chores, such as cleaning floors, not so basic as to qualify as a major life activity).

    Accordingly, Plaintiff has failed to meet her burden of proving that she is substantially limited from the major life activity of performing manual tasks, such that her impairment "prevents or severely restricts [her] from doing activities that are of central importance to most people's daily lives." Toyota Motor, 534 U.S. at 195-96.


### b.    Working

    It is undisputed that Plaintiff is physically unable to perform the duties of her former HMER position. (Document # 30 at ¶ 22; Document # 36 at ¶ 22). However, the inability to perform a single, particular job, or one particular task of a job, does not constitute a substantial limitation of a major life activity. Olson v. General Elec. Astrospace, 101 F.3d 947, 952 (3d Cir. 1996). Rather, it is incumbent upon Plaintiff to demonstrate that she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in

various classes as compared to the average person having comparable training, skills, and abilities." Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 727 (5th Cir. 1995), quoting 29 C.F.R. § 1630.2(j)(3)(i).

In an attempt to meet her burden, Plaintiff has asserted that "it is clear that the limitations that prevent her from performing the HMER job, specifically her inability to lift more than ten pounds, would also prevent her from performing any mechanic job or, indeed, any heavy or moderate laborer job." (Document # 35 at p. 15). This assertion, however, is not substantiated by any evidence of record and amounts to no more than a statement of Plaintiff's opinion based solely upon the restrictions placed upon her by her treating physician. The only medical evidence Plaintiff offers in support of this assertion is Dr. Gomez's opinion that Plaintiff's restrictions would limit her to sedentary work. (Document # 37 at ¶ 12; Document # 35 at p. 15). This opinion is not sufficient. See Marinellli, 216 F.3d at 365 ("[plaintiff] cannot avoid judgment as a matter of law simply by pointing to the restrictions that [his treating physician] placed upon his work"); Broussard v. University of California, 192 F.3d 1252, 1257-58 (9th Cir. 1999)(holding that plaintiff could not defeat summary judgment by relying upon vocational rehabilitation expert's opinion that she could only perform "sedentary to light" categories of work); McKay v. Toyota Motor Mfg., USA, Inc., 110 F.3d 369, 372-73 (6th Cir. 1997)(evidence that plaintiff was restricted from performing medium to heavy work (i.e., any position requiring "repetitive motion or frequent lifting of more than ten pounds") was insufficient to establish that impairment disqualified her from a broad range of jobs); Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 644-45 (2nd Cir. 1998)(holding that testimony suggesting that plaintiff could only perform light or sedentary work merely established that plaintiff was disqualified from a "narrow range of jobs," and was insufficient to establish disability under the ADA).

Since Plaintiff has not offered any evidence or opinion from a medical or vocational rehabilitation expert to support her bald assertion that she is precluded from performing any

19

mechanic or heavy laborer job, she has failed to meet her burden of demonstrating that she is substantially limited from performing the major life activity of working.

Based on the foregoing, therefore, Plaintiff has failed to establish that her impairment substantially limits her from performing one or more major life activities, such that she can be considered "disabled" under the Rehabilitation Act.  As a result, Plaintiff has failed to state a *prima facie* case of disability discrimination under the Act, and this case should be dismissed.


### III.     CONCLUSION

_____For the foregoing reasons, t is respectfully recommended that Defendant's motion for summary judgment [Document # 28] be granted.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.


S/Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief U.S. Magistrate Judge


Dated: December13, 2006

cc:     The Honorable Sean J. McLaughlin
        United States District Judge

20