IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EVELYN L. McKINLEY, | : | JURY TRIAL DEMANDED |
| | : | |
| Plaintiff, | : | Civil Action No. 04-222 E |
| | : | |
| vs. | : | Hon. Judge Sean J. McLaughlin |
| | : | Hon. Mag. Judge Susan |
| HONORABLE LES BROWNLEE, | : | Paradise Baxter |
| ACTING SECRETARY OF THE ARMY, | : | |
| | : | Electronically Filed |
| Defendant. | : | |

**PLAINTIFF'S OBJECTIONS TO MAGISTRATE
JUDGE'S REPORT AND RECOMMENDATION**

AND NOW, comes Plaintiff, Evelyn McKinley, by and through her counsel of record and files the following Objections to the Magistrate Judge's Report and Recommendation dated December 13, 2006:

**A. Objection To Magistrate's Finding That Plaintiff Could Not Establish A Prima Facie Case Of Gender Discrimination.**

On pages 8 through 11 of the Magistrate Judge's Report and Recommendation, the Magistrate Judge concludes that Plaintiff cannot establish the fourth element of her prima facie case of gender discrimination. This conclusion is based on the Magistrate's finding that Mr. Whetzel, the male employee that Plaintiff contends was similarly situated to her and yet treated more favorably, was not, in fact, similarly situated to Plaintiff.

Plaintiff first objects to the Magistrate's conclusion, on page 9 of the Report and Recommendation, that the Defendant's creation of a Maintenance Administrative Clerk position for Mr. Whetzel in 1996 was no different than the Defendant creation of a limited duty HMER position for Plaintiff in November 2001. Contrary to the Court's finding, there is record evidence that Mr. Whetzel was double slotted into his position as there was not a vacancy available. (Plaintiff's Statement of Additional Material Facts (SOAMF), ¶ 4). He then held the Maintenance Administrative Clerk position for approximately four years, at which time he was moved to the Supply Clerk position at ECS-103. (SOAMF, ¶¶ 1, 2). There is evidence that indicates that he was not required to apply for either of these positions. (SOAMF, ¶ 5).

In contrast, it is uncontested that Plaintiff was given temporary light duty modifications to her HMER position rather than being double slotted into a permanent position that she could perform with her medical restrictions. The Defendant refused to allow her to return even to this position after she was cleared to return to work in March 2003. (SOAMF, ¶ 20).

Thus, Mr. Whetzel was double slotted into a permanent position that he could perform with his limitations and remained in this position for four years. In contrast, Plaintiff was merely given a temporary light duty position which she was not

permitted to return to in March 2003. This should be found sufficient to establish that Mr. Whetzel was treated more favorably with respect to this narrow issue.

Plaintiff next objects to the Magistrate's finding, on pages 9 and 10 of the Report and Recommendation, that Mr. Whetzel was not similarly situated. In making this determination, the Court relied on a number of cases that collectively and separately held that a plaintiff must show that the "comparables" are similarly situated in all respects, including having the same supervisor, the same or equivalent position at the time of the challenged decision, and engaged in the same conduct without any differentiating or mitigating circumstances. Plaintiff agrees that the test used in the Third Circuit to determine whether a proposed comparator is "similarly situated" is whether there are distinguishing or mitigating circumstances that would distinguish the employer's treatment of the proposed comparator(s) from the employer's treatment of the plaintiff. <u>Bullock v. Children's Hospital</u>, 71 F.Supp.2d 482, 489 (E.D. Pa. 1999).

The Court then concludes, on pages 10 and 11 of the Report and Recommendation, that Plaintiff and Mr. Whetzel were not similarly situated as they had different supervisors at all times, that different individuals made the relevant decisions, that Mr. Whetzel was paid at a higher rate than Plaintiff, and that Mr. Whetzel held a different position at the time that

Plaintiff was removed from employment.

However, it falls to reason that only the characteristics that are actually relevant to the employment decision at issue should be considered to determine if a comparable is similarly situated.

Here, the record evidence shows that both Plaintiff and Mr. Whetzel were employed in an HMER position (Defendant's Statement of Undisputed Material Facts (SOMF), ¶ 3; SOAMF, ¶ 4), both suffered injuries that prevented them from ever again being able to perform the full duties of the HMER position (SOMF, ¶¶ 47, 48; SOAMF, ¶¶ 3, 4); after being released to return to work, both were assigned positions by the administrative offices at Fort McCoy and not by their local supervisors as stated by the Magistrate (SOAMF, ¶¶ 14-16). It was the administrative offices at Fort McCoy that also made the decision to terminate Plaintiff's employment, with Mr. Fairbanks only signing the paperwork. (SOAMF, ¶ 17).

While Mr. Whetzel did hold a supply clerk position at the time Plaintiff was terminated, which is, admittedly different from the HMER position technically held by Plaintiff at the time, Mr. Whetzel was a HMER until he was injured. (SOAMF, ¶¶ 3, 4). This is the same position as that held by Plaintiff. *Id.* The reason that Plaintiff is claiming he was treated more favorably is that after he was injured he was first double slotted in

4

another position and then permanently assigned to the position of supply clerk, without applying for either position. (SOAMF, ¶¶ 1, 2, 4, 5). In contrast, Plaintiff was assigned a temporary light duty position and then terminated when it became apparent that she would not be able to return to the HMER position. (*See*, SOAMF, ¶ 20).

Finally, although it is true that Mr. Whetzel was paid at a higher rate than Plaintiff, this is not a differentiating factor. Mr. Whetzel received higher pay than Plaintiff because he continued to be paid as a HMER even after he was unable to perform that job. (Plaintiff's Response to Defendant's Statement of Undisputed Material Facts (Response), ¶ 61). The supply clerk and supply technician positions are on a lower pay scale than HMER. (SOAMF, ¶ 18). Thus, Mr. Whetzel's pay is hardly a relevant distinguishing factor when his rate of pay was even further out of the usual range of the supply clerk position than Plaintiff's would have been.

Based on the foregoing, there is sufficient evidence to create a genuine issue of material fact as to whether Mr. Whetzel was similarly situated to the Plaintiff and whether he was treated more favorably. The Report and Recommendation should be modified accordingly.

**B.   Objection To Magistrate's Finding That There Is Insufficient Evidence To Establish Pretext.**

Plaintiff also objects to the Magistrate's finding, on pages

11 and 12 of the Report and Recommendation, that there was insufficient evidence to create a genuine issue of material fact on the issue of pretext.

On page 11 of the Report and Recommendation, the magistrate does correctly set forth the Plaintiff's burden of proof at this stage of the analysis.  However, the magistrate fails to fully set forth the Defendant's proffered non-discriminatory reasons for its actions.  The Defendant's proffered reasons were Plaintiff's prolonged absence from the worksite with no definite expectation of return to full time duty, her inability to perform the duties of the HMER position and the unavailability of any job vacancies for which she was qualified.

However, on page 12 of the Report and Recommendation, the magistrate, although noting that the availability of other positions for which the Plaintiff was qualified during the relevant period coupled with the Defendant's failure to notify Plaintiff of same could be evidence of pretext, found that the fact that two of six available positions were filled by women prevented Plaintiff from establishing pretext.  This is an incorrect application of the applicable standard as it appears to require Plaintiff to provide both evidence that the Defendant's proffered reason is unworthy of credence **and** evidence that invidious discrimination was the actual reason.  Contrary to the magistrate's holding, "if the plaintiff has pointed to evidence

sufficient to discredit the defendant's proffered reasons, to survive summary judgment, the plaintiff need not also come forward with additional evidence of discrimination beyond his or her prima facie case." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

To counter the Defendant's first proffered reason, the Plaintiff produced evidence that there was basis for an expectation of return to full time duty. Specifically, in March 2003, Plaintiff was cleared to return to sedentary work. (SOAMF, ¶ 20). The Defendant, however, did not permit Plaintiff to return to work in any capacity at that time. *Id.*

Furthermore, the magistrate ignores the fact that, in addition to not informing Plaintiff of the existence of any of the available vacancies, the Defendant also refused to reply to Nurse Green's inquiries concerning alternative positions, leading her to conclude that there weren't any available. (Response, ¶ 46).

Finally, the Magistrate ignored the fact that when Mr. Whetzel, a male employee, became too disabled to perform the duties of an HMER, a permanent full time position was created for him and he was subsequently transferred to a supply clerk position, without having to apply for either position. (SOAMF, ¶¶ 3, 4, 5).

By reason of the foregoing, there is sufficient record

evidence for a fact finder to disbelieve the Defendant's proffered reasons. This, coupled with Plaintiff's prima facie case, is sufficient to defeat summary judgment on the issue of pretext. The Report and Recommendation should be modified accordingly.

**C.   Objection To Magistrate's Finding That Plaintiff Is Not Substantially Limited In The Major Life Activity Of Working.**

Plaintiff finally objects to the Magistrate's finding, on pages 18 through 20 of the Report and Recommendation, that Plaintiff is not substantially limited in the major life activity of working.

In reaching this conclusion, the Magistrate first relies on Marinelli v. City of Erie, Pa., 216 F.3d 354 (3d Cir. 2000) for the proposition that a plaintiff cannot avoid summary judgment by pointing to the restrictions that his treating physician placed upon his work. As an initial matter, the Marinelli opinion involved a motion for judgment as a matter of law following a trial on the merits and not a motion for summary judgment. *See Id.* In addition, the Marinelli Court was referring to a ten pound lifting restriction that Marinelli's physician had placed him on based solely on Marinelli's own assessment of what he could lift. *Id.* at 353-354.

This case, however, does not involve a work restriction jotted down by a physician based solely on the patient's own

estimations.  Rather, Dr. Gomez, who was Plaintiff's treating physician for a number of years, stated unequivocally at his deposition that, because of her permanent impairments, Plaintiff is unable to safely lift more than ten pounds, that she cannot walk for long periods of time and that she cannot sit for long periods of time. (SOAMF, ¶¶ 13, 14).  Dr. Gomez also stated that because of these restrictions, Plaintiff was limited to sedentary work. (SOAMF, ¶ 13).  The context of Dr. Gomez's deposition testimony made it clear that he was referring to Plaintiff's actual physical restrictions rather than work restrictions jotted down by a physician on a return to work slip as was involved in Marinelli.  (Gomez Dep. pp. 28-29, 39-42, 44[1]).

Dr. Gomez's testimony was supported by Plaintiff's testimony that she wasn't able to buy many groceries at one time due to the weight, that she was unable to do any yard work such that someone had to be hired to do it, that she does laundry more frequently with lighter loads because of the weight, that she is unable to dust or vacuum regularly, and that she doesn't let the garbage can fill up because of the weight. (Response, ¶ 36).

Thus, Marinelli is inapplicable here as the "restrictions" noted by Plaintiff's treating physician are a medical opinion based on his ongoing treatment of Plaintiff rather than a

---

[1] The cited portions of Dr. Gomez's deposition testimony are included in Exhibit 1 of the Appendix to Plaintiff's Opposition to Defendant's Motion for Summary Judgment.  For the convenience of the Court, the cited portions of Dr. Gomez's testimony have been reproduced and attached hereto as Exhibit 1.

patient's own estimation of his abilities without any supporting materials.

The magistrate next cites to Broussard v. Univ. of California, 192 F.3d 1252 (9th Cir. 1999) for its holding that a plaintiff could not defeat summary judgment based on a vocational rehabilitation expert's opinion that she could only perform sedentary to light categories of work. However, the holding in Broussard was not nearly as broad as the magistrate suggests. Rather, the Broussard court found that the vocational expert report submitted in that case was not credible evidence as "[The expert's] analysis is flawed for at least two reasons. First, his calculations are based on lifting restrictions, but this restriction was not tested by Brent or Dr. Massem. Second, he stated that Broussard was limited to fifteen minute intervals on a keyboard. Brent's testing, however, found Broussard could perform for fifty minutes at a time on the keyboard. Moreover, Church's declaration draws the legal conclusion that Broussard is "substantially impaired in her ability to pre- form a class of jobs" by reciting the language of 29 C.F.R. S 1630.2(j)(3)(i) and concluding that Broussard is thus "disabled" as defined by the ADA." *Id.* at 1257-58.

Here, in contrast to Broussard, Plaintiff's treating physician unequivocally stated that Plaintiff is limited to sedentary work based on her medical limitations. This coupled

10

with the fact that it is uncontested that Plaintiff cannot perform the duties of the HMER position, the fact that Plaintiff's only vocational training was that she received in the Army as a mechanic (SOAMF, ¶ 19), and the fact that it cannot seriously be argued that there are mechanic positions which are sedentary[2] should be found sufficient to create a genuine issue of material fact as to whether Plaintiff is substantially limited in the major life activity of working.  Thus, Broussard is inapplicable here.

    The magistrate next cites to McKay v. Toyota Motor Mfg., USA, Inc., 110 F.3d 369 (6th Cir. 1997) for its holding that evidence that plaintiff was restricted from performing medium to heavy work was insufficient to establish that her impairment disqualified her from a broad range of jobs.  However, this holding was based on the Court's finding that:

> plaintiff in this case says the evidence regarding her physical impairment compels a conclusion that she is significantly restricted in her ability to perform any medium or heavy work. While she did present expert testimony to that effect, the same expert, when pressed, acknowledged that the positions she held at Toyota did not involve medium or heavy work. He also conceded that there were a broad range of jobs that she could perform. Since plaintiff's work history at Toyota involved only light work, and she made no showing that she ever was able to perform medium or heavy work, one is hard pressed to comprehend how she could have been

---

[2] It is common knowledge, possessed by a majority of the population, that even the simplest and most mundane of mechanic tasks, such as rotating tires, replacing an exhaust system, or changing brake pads and/or rotors involve substantial physical effort and certainly require lifting far more than 10 pounds.

> regarded as a "qualified individual" with respect to medium and heavy work.

*Id.* at 373.

Here, as previously set forth, the evidence shows that Plaintiff's only vocational training and only meaningful employment was as a mechanic. Plaintiff's testimony, and that of her treating physician, show that she is physically incapable of safely lifting more than ten pounds and is only capable of working in sedentary positions, which certainly precludes working as a mechanic. Thus, McKay is inapplicable here.

The magistrate finally cites to Colwell v. Suffolk County Police Dept., 158 F.3d 635 (2d Cir. 1998) for its holding that testimony suggesting that plaintiff could only perform light or sedentary work merely established that plaintiff was disqualified from a "narrow range of jobs," and was insufficient to establish disability under the ADA. However, in Colwell, which involved an appeal from a jury verdict for the plaintiffs, the testimony of the relevant plaintiff's physician merely limited him from performing police work involving physical confrontation, which is the "narrow class of jobs" referred to in the holding. *Id.* at 645. As this equivocal medical testimony did not limit that plaintiff from doing any other type of police work, the Court, without much discussion, found it to be insufficient to establish a substantial limitation in the major life activity of working.

*Id.*

Again, as previously set forth, Plaintiff's treating physician testified at deposition that, among other limitations, Plaintiff is physically incapable of safely lifting more than ten pounds and can only perform sedentary work. Plaintiff's own testimony corroborated Dr. Gomez's testimony concerning her limitations. Furthermore, it is uncontested that Plaintiff is incapable of performing the duties of the HMER position regardless of any accommodation that could be provided rather than just one aspect of the HMER job. Thus, Colwell is inapplicable.

Finally, Plaintiff objects to the magistrate's statement, on pages 19 and 20 of the Report and Recommendation, that "Plaintiff has not offered any evidence or opinion from a medical or vocational expert to support her bald assertion that she is precluded from performing any mechanic or heavy laborer job..."

As previously stated, Plaintiff did present expert medical testimony on the subject. Specifically, Plaintiff's treating physician stated that she is only capable of performing sedentary work. By definition, indeed by the very terms of the title itself, heavy laborer work is not sedentary.

Furthermore, even if Plaintiff had not presented any expert medical testimony on the matter, this would not necessarily have

been fatal to her claims, as is suggested by the magistrate. In Marinelli, which had been cited by the Magistrate in the previous paragraph, the Third Circuit stated:

> In Katz [v. City Metal Co., 87 F.3d 26 (1st Cir. 1996)], the court held that [t]here is certainly no general rule that medical testimony is always necessary to establish disability. Some long-term impairments would be obvious to a jury (e.g., a missing arm) and it is certainly within the realm of possibility that a plaintiff himself in a disabilities case might offer a description of treatment and symptoms over a substantial period that would [allow] the jury [to] determine that[the plaintiff] did suffer from a disability. Id. at 32. In other words, the necessity of medical testimony turns on the extent to which the alleged impairment is within the comprehension of a jury that does not possess a command of medical or otherwise scientific knowledge. Building upon this notion, other courts have held similarly, and have added that a lack of medical testimony should be a factor cutting against a plaintiff's claim of disability. *See, e.g.*, United States v. City of Denver, 49 F. Supp. 2d 1233 (D. Colo. 1999) (holding that a lack of physician testimony is but one factor in determining whether a plaintiff has met his burden to establish disability); Colwell v. Suffolk County Police Dep't, 967 F. Supp. 1419, 1425-26 (E.D.N.Y. 1997)(holding that "nothing in the ADA compels the conclusion that medical evidence is necessary to establish disability status"); *rev'd on other grounds*, 158 F.3d 635 (2d Cir. 1998). *Cf.* Schwimmer v. Kaladjian, 988 F. Supp. 631, 640 (S.D.N.Y. 1997) (holding, in a section 1983 case, that medical testimony is more persuasive than the witness's own recapitulation of his injuries). With respect to the instant matter, Marinelli's alleged medical difficulties (i.e., arm and neck pain) are among those ailments that are the least technical in nature and are the most amenable to comprehension by a lay jury. As such, Marinelli's failure to present medical evidence of his impairment, in and of itself, does not warrant judgment as a matter of law in favor of the City.

Marinelli, 216 F.3d at 359.

For the foregoing reasons, the Report and Recommendation should be modified to find that Plaintiff is substantially limited in the major life activity of working.

                                Respectfully submitted,

                                LAW OFFICES OF NEAL A. SANDERS

Dated: January 2, 2007        By: /s/Neal A. Sanders
                                    Neal A. Sanders, Esquire
                                    PA ID NO. 54618
                                    Co-Counsel for Plaintiff,
                                    Evelyn McKinley

                              By: /s/Dirk D. Beuth
                                    Dirk D. Beuth, Esquire
                                    PA ID NO. 76036
                                    Co-Counsel for Plaintiff,
                                    Evelyn McKinley

                                    LAW OFFICES OF NEAL A. SANDERS
                                    1924 North Main Street Ext.
                                    Butler, PA 16001
                                    (724) 282-7771