```
1          IN THE UNITED STATES DISTRICT COURT

2        FOR THE WESTERN DISTRICT OF PENNSYLVANIA

3                        - - -

4

5   EVELYN L. McKINLEY,           )
                                  )
6             Plaintiff,          )
                                  ) Civil Action
7        vs.                      ) No. 04-222E
                                  )
8   HONORABLE LES BROWNLEE,       )
    ACTING SECRETARY OF THE ARMY, )
9                                 )
              Defendant.          )
10

11                       - - -

12       Deposition of LUIS L. GOMEZ, M.D.

13         Thursday, December 29, 2005

14                       - - -

15       The deposition of LUIS L. GOMEZ, M.D., called as
    a witness by the plaintiff, pursuant to notice and the
16  Federal Rules of Civil Procedure pertaining to the
    taking of depositions, taken before me, the
17  undersigned, Darla J. Carabotta, Notary Public in and
    for the Commonwealth of Pennsylvania, at the offices
18  of Luis L. Gomez, M.D., 509 Poplar Street, Meadville,
    Pennsylvania 16335, commencing at 10:00 o'clock a.m.,
19  the day and date above set forth.

20                       - - -

21         COMPUTER-AIDED TRANSCRIPTION BY
             MORSE, GANTVERG & HODGE, INC.
22              ERIE, PENNSYLVANIA
                   814-833-1799
23
                         - - -
24

25
```

PAGE 26

26

1  six months"?
2  A  Yes.
3  Q  The next document in this series of
4  documents, Exhibit 4, is this a letter from Dr. Welch
5  to you, Dr. Gomez, dated November 12th of '02?
6  A  Yes.
7  Q  And is this a document that speaks for
8  itself?
9  A  Yes.
10  Q  Would this be another update from his
11  office to you as to how Evelyn was doing?
12  A  Yes.
13  Q  Next is a letter apparently from Dr. Welch
14  to you, dated February 6th of '03. Would you take a
15  moment and read that to yourself?
16  A  Okay.
17  Q  Am I reading it correctly in the next to
18  last paragraph where he says, "We told her she is to
19  be off work for at least the next eight weeks and then
20  she may return to sedentary work with a ten pound
21  weight limit. We will keep you informed as to her
22  progress"?
23  A  Yes.
24  Q  Would you have been in agreement with that
25  being her continuing limitations status at that time?

PAGE 27

27

1  A  Yes.
2  Q  Dr. Gomez, just to stop for a second, do
3  you recall at any time during the treatment by you of
4  Evelyn McKinley, from the time she had the injury in
5  '01 April, even until today, that you ever disagreed
6  with the way in which Dr. Welch was handling her
7  treatment?
8  A  No.
9  Q  The next document, dated February 6 of '03,
10  would this be a script from Dr. Welch concerning your
11  patient Evelyn McKinley?
12  A  Yes.
13  Q  Do I read that correctly, "To be off work
14  for eight weeks and then may return to sedentary work,
15  ten pound weight limit"?
16  A  Yes.
17  Q  Dr. Gomez, at that point in time, February
18  of 2003, based upon your recollection, and if you want
19  to review your notes, would you have been in agreement
20  at that time with Evelyn continuing to have
21  limitations on how long she could sit, how long she
22  could stand, how often she needed to get up and take a
23  break? Would you have been in agreement with that?
24  A  Yes.
25  Q  So was there more than just the ten pound

PAGE 28

28

1  weight limitation at that point in time, did it
2  include these other items as well?
3  A  No.
4  Q  Did you believe that at that point in time
5  Evelyn had made full recovery?
6  A  She was better.
7  Q  Next is a letter from Dr. Welch to Evelyn.
8  Do you have a copy of that?
9  A  Yes.
10  Q  On March 5 of 2003. Does he indicate that
11  he believes it would be safe for her to return to a
12  part-time light-duty type job effective March 16, '03?
13  A  Yes.
14  Q  Would you have been in agreement with that
15  at that time?
16  A  Yes.
17  Q  The next document appears to be a
18  rehabilitation form that was completed by Dr. Welch on
19  or about April 16 – it's dated April 16 of 2003. Do
20  you have that two page document?
21  A  Yes.
22  Q  There's a question on the bottom of page 1
23  that was posed to him, the question is, "Is
24  Ms. McKinley physically capable of performing some
25  type of limited duty work at this time?" And there's

PAGE 29

29

1  a box for a yes and a box for a no. Is it marked
2  "Yes"?
3  A  Yes.
4  Q  Would you have been in agreement with that
5  at that time?
6  A  Yes.
7  Q  The next document, another Work Capacity
8  Evaluation completed by Dr. Welch's office on May 1 of
9  2003. Do you have that in front of you?
10  A  Yes.
11  Q  Would you take a look and see what time
12  limitations and activity limitations he's marked there
13  for her? And after you have done that, to tell us
14  whether you are in agreement that those limitations
15  were necessary at that time?
16  A  Yes.
17  Q  You agree that they were necessary at that
18  time?
19  A  Yes.
20  Q  While I hold this for you, could you look
21  at your chart and tell us the – and look at the year
22  2003, starting in January, and tell us what records
23  you have of having Evelyn into the office at that
24  time, or during that year of 2003?
25  A  It would 6/25/2003.

SHEET 5 PAGE 30

**Page 30**

1  Q   What about between January 1st of '03 and
2  June of '03?
3  A   I don't recall any.
4  Q   Do you have any entries for the months --
5  I'm looking over your shoulder, you have entries for
6  February of '03, March of '03; is that correct?
7  A   Yes.
8  Q   What do those entries say?
9  A   February she had some stitches removed, she
10 have some chest pain, there was some question of
11 cardio problem.
12 Q   So would you have been seeing her at some
13 point during those entries?
14 A   Yes.
15 Q   So you did have her in your office?
16 A   Yes.
17 Q   And your chart would indicate when you saw
18 her and what treatment you gave to her; is that
19 correct?
20 A   Yes.
21 Q   Let me give you back this exhibit now.
22     The next exhibit is a letter from Dr. Welch
23 to you dated May 22nd of 2003. Do you have that?
24 A   Yes.
25 Q   Would you take a moment and just read that

**Page 31**

1  to yourself?
2  A   Okay.
3  Q   All right.
4     THE WITNESS: Excuse me one second.
5     (Off the record.)
6  BY MR. SANDERS:
7  Q   We're almost done with this exhibit,
8  Doctor.
9  A   No problem.
10 Q   This letter Dr. Welch to you dated May 22nd
11 of 2003, do you have that in front of you?
12 A   Yes.
13 Q   Do you see in the next to last paragraph he
14 says, "I told her she could perform a sedentary job
15 which I mean lifting a limit of ten pounds, and she
16 may need to change position as required for comfort
17 (this may include sitting, standing, or walking)." Do
18 you see that?
19 A   Yes.
20 Q   Would you have been in agreement with those
21 limitations at that time for your patient?
22 A   Yes.
23 Q   Ms. McKinley?
24 A   Yes.
25 Q   The next document is a letter dated October

**Page 32**

1  9th of 2003 from Dr. Welch to you. Do you have that
2  in front of you?
3  A   Yes.
4  Q   Take a moment just to read that to
5  yourself. It's not too long.
6  A   Okay.
7  Q   Do you see in paragraph 1 where he's
8  talking about something that Evelyn told him, namely
9  she doesn't believe she had any benefit from the
10 surgery that he had performed, that her feet hurt her
11 in the morning, that she has not been back to work,
12 that she's been told there's no light duty job
13 available, and that she's still on disability?
14 A   Yes.
15 Q   Was that your understanding at that point
16 in time, in October of '03?
17 A   Yes.
18 Q   And finally, the final page to this exhibit
19 is a letter from Dr. Welch to myself, dated October
20 17th of 2005. Do you have that?
21 A   Yes.
22 Q   Would you take a moment -- I tried to give
23 you a good copy to read. Would you take a moment to
24 read that to yourself?
25 A   Okay.

**Page 33**

1  Q   Do you want to just put that down? Why
2  don't we put it here.
3     Let's go now to Exhibit 8. Doctor, do you
4  have Exhibit 8 in front of you?
5  A   Yes.
6  Q   Is your exhibit three pages long?
7  A   Yes.
8  Q   Is this a letter from you, a report from
9  you to me dated this year, November 10th of '05?
10 A   Yes.
11 Q   Could you take a moment and read it to
12 yourself again? I have a few questions to ask you
13 about it.
14 A   Okay.
15 Q   Have you had a chance to read that to
16 yourself?
17 A   Yeah.
18 Q   Is that your signature on the last page?
19 A   Yes.
20 Q   Does this letter or report from you to me
21 contain your opinions with regards to Evelyn
22 McKinley's treatment and care and her current status?
23 A   Yes.
24 Q   Do you want to hand Doctor Exhibit 1?
25     Doctor, I have given you Exhibit 1, and ask

SHEET 6  PAGE 38

**Page 38**

1   A   Yes.
2   Q   Was this made available to you by my office
3 in preparation for you to do that report letter that
4 you sent me?
5   A   Yes.
6   Q   And did you review this Tools and Parts
7 Attendant job announcement?
8   A   Yes.
9   Q   Look at the second page, if you would,
10 under the section entitled on the bottom – I'm sorry,
11 yours has it on the first page, it says "Major
12 Duties". Do you have that?
13   A   Yes.
14   Q   Would you read that to yourself and tell me
15 whether you believe, given the deficits and
16 limitations that Evelyn had in 2003 when she was
17 released back to work by Dr. Welch and yourself,
18 whether she could have done this job?
19   A   Okay.
20   Q   Have you had a chance to do that?
21   A   Yes.
22   Q   All right. In general, could in your
23 opinion Evelyn have done this job if she was given
24 help from time to time?
25   A   Yes.

**Page 39**

1   Q   The type of help, Doctor, that you and
2 Dr. Welch felt she needed, the breaks, the not
3 standing for long periods of time, not sitting for
4 long periods of time, not walking long distances
5 without a break, the weight limitation of ten pounds
6 or less, based upon your years of medical experience
7 and treating patients, do you believe that those
8 limitations were reasonable to ask the employer to
9 follow?
10   A   Yes.
11   Q   And why do you feel that way? Why do you
12 feel they were reasonable?
13   A   Well, you have to accommodate the patient a
14 little bit if she wants to work, at least try.
15   Q   You use the word "accommodate the patient a
16 little," do you feel that Evelyn was requiring the
17 employer to make special concessions or unreasonable
18 concessions?
19   A   I don't think so, no.
20   Q   Doctor, here is a document, I'm not even
21 going to mark this, this is the Heavy Mobile Equipment
22 Repairer Leader Position Description, this was the job
23 Evelyn had when she injured herself in April of '01.
24 Would you take a look at this for a moment, especially
25 the section entitled "Major Duties," and tell me

**Page 40**

1 whether or not you think Evelyn could have ever gone
2 back to this heavy duty job ever again?
3   A   No.
4   Q   And why do you feel that way?
5   A   She has still a chronic problem, she
6 couldn't do it.
7   Q   In your opinion based upon your
8 examinations and the records that you exchanged with
9 Dr. Welch, and your treatment of Evelyn, is Evelyn's
10 deficit or problems, are they permanent in nature, if
11 you know?
12   A   Yes.
13   Q   Are you confident that they are permanent
14 in nature?
15   A   I think so, yeah.
16   Q   Now, it would be true that she tried
17 surgical intervention and it did not work; is that
18 correct?
19   A   That's true.
20   Q   I think we're on Exhibit 5. Do you have
21 Exhibit 5 there?
22   A   Yes.
23   Q   Doctor, in your report, your report letter
24 to me, you make the statement that you were made aware
25 that there were male individuals who were being

**Page 41**

1 accommodated, and not Evelyn. What I've given you
2 here is a male individual named Donald Whetzel. And
3 do you have that document in front of you?
4   A   Yes.
5   Q   Is your document three pages long?
6   A   Yes.
7   Q   Do you see on page 1 of this document that
8 this fellow, this gentleman, in paragraph 1, also used
9 to have the job of Heavy Mobile Equipment Repairer,
10 like Evelyn? In paragraph 1.
11   A   Yes.
12   Q   And if you go down to paragraph No. 1, does
13 it say "Position Offered: Maintenance Administrative
14 Clerk"?
15   A   Yes.
16   Q   To your knowledge would that have been the
17 same maintenance administrative clerk, Exhibit 1, that
18 you reviewed and felt Evelyn could do?
19   A   Yes.
20   Q   Is this one of the individuals you were
21 referring to in your report when you mentioned male
22 individuals, this Mr. Whetzel?
23   A   Yes.
24   Q   Did you and Evelyn see each other recently
25 for an exam? When was the last time you saw Evelyn?

PAGE 42

```
42
 1  Your report says November, early November of '05.
 2  A    November 8, 2005.
 3  Q    November 8th of 2005. Did you and Evelyn
 4  talk during that examination about her case and the
 5  upcoming deposition at all?
 6  A    Not very much. I don't recall too much.
 7  She came in for a check-up.
 8  Q    All right. And at that time, just a few
 9  weeks ago, in your opinion what was her limitations,
10  were they changed at all, or did she continue to need
11  to be under restrictions or limitations?
12  A    No change.
13  Q    She still needed to have these same
14  limitations and restrictions you have discussed
15  earlier?
16  A    Yes. She come in for a complete check-up.
17  Q    Exhibit 6. Dr. Gomez, I've made available
18  to you a document that was given to me by the
19  government for a male individual who was offered and
20  given the supply technician position in September of
21  '03. Do you see that?
22  A    Yes.
23  Q    To your knowledge, would this have been the
24  same supply technician's position that you reviewed in
25  Exhibit 2?
```

PAGE 43

```
43
 1  A    Yes.
 2  Q    And is this individual's name, the best you
 3  can tell, Michael A. Pennington?
 4  A    Yes.
 5  Q    And he's not a patient of yours, is that
 6  correct, to your knowledge?
 7  A    No. No.
 8  Q    Is this another individual that may have
 9  been mentioned to you, or you came to know about from
10  talking to Evelyn?
11  A    No, I don't recall.
12  Q    You don't know whether she mentioned any
13  particular names?
14  A    No.
15  Q    Doctor, I've given you Exhibit 7. This is
16  a paper, a memo about Evelyn, your patient, from her
17  boss at the time, back in the period of 1998 to 2000.
18  Do you have that document in front of you?
19  A    Yes.
20  Q    Prior to Evelyn injuring herself in '01
21  when she was a heavy repairer, heavy equipment
22  repairer, she stood in for a while and did this supply
23  clerk/supply technician job, do you see that?
24  A    Yes.
25  Q    Again, is this that position that you feel
```

PAGE 44

```
44
 1  that she could have gone back to do had they offered
 2  it to her?
 3  A    Yes.
 4  Q    Dr. Gomez, just a few more questions.
 5       Do you, based upon all that you know of
 6  Evelyn, and all the records you have reviewed, and the
 7  exams and treatments that you have given her, believe
 8  that Evelyn McKinley became disabled as a result of
 9  the April 2001 injury at work with the battery?
10  A    Yes.
11  Q    Now, you have already previously testified
12  you feel that she was capable and qualified to perform
13  those light duty jobs you identified; is that correct?
14  A    Yes.
15  Q    And at some point in time did you learn
16  that the Army terminated or fired her in February of
17  '04 from her employment?
18  A    She mentioned to me.
19  Q    Do you have – are you of the opinion that
20  the plaintiff's deficits, her physiological
21  impairments substantially affected or limited her in
22  walking?
23  A    Yes.
24  Q    Standing for long periods of time?
25  A    Yes.
```

PAGE 45

```
45
 1  Q    Sitting?
 2  A    Yes.
 3  Q    Lifting objects more than ten pounds?
 4  A    Yes.
 5  Q    Doing daily manual tasks around the house?
 6  A    Yes.
 7  Q    And also working?
 8  A    Yes.
 9  Q    Does she continue to have those deficits
10  and those limitations?
11  A    Yes.
12  Q    Now, despite the fact that she continues to
13  have those deficits and limitations, are you in fact
14  of the opinion that she can at this time even do some
15  of those lighter duty jobs?
16  A    She can.
17  Q    And again, not to beat a dead horse, I'm
18  almost done, but the length of time that she's going
19  to suffer from these impairments, is it a limited
20  amount of time, or is this basically a lifelong
21  problem?
22  A    It looks like a permanent problem, personal
23  opinion.
24  Q    Would you characterize her impairment or
25  her deficits as severe?
```